202 So.2d 872 (1967)
FLORIDA POWER CORPORATION, a Florida Corporation, Appellant.
v.
Jenethel SMITH, a Widow, Appellee.
FLORIDA POWER CORPORATION, a Florida Corporation, Appellant.
v.
Rosalie Bernedette FLEMING, a Widow, Appellee.
Nos. 7199, 7200.
District Court of Appeal of Florida, Second District.
September 27, 1967.
*874 Mann, Harrison, Mann & Rowe, St. Petersburg, for appellant.
Muscarella & Perenich, Clearwater, for appellees.
PIERCE, Judge.
The above two wrongful death cases arising out of the same accident, although *875 filed separately in the Court below, were consolidated for trial, and because they both involve identical contentions here, they will be disposed of in this single opinion. Appellant Florida Power Corporation, defendant below in each case, appeals from identical orders entered by the trial Judge granting motions for a new trial to the plaintiffs below after jury verdicts for defendant corporation. (Whenever the cases or the plaintiffs are herein referred to in the singular, it will be understood as applying to both cases and both plaintiffs).
The suits were filed in the Pinellas County Circuit Court by Rosalie Bernedette Fleming and Jenethel Smith, seeking damages in the deaths of their respective husbands, Don Fleming and Walter Smith, employed as foreman and laborer respectively by Hubbard Construction Company, while engaged in unloading metal pipe on June 4, 1963, on Fair Villa Road near Orlando, Orange County, Florida. Overhead electrical distribution lines of Florida Power Corporation ran parallel with the roadway. The sections of metal pipe were being hoisted from a delivery truck to the ground by means of a crane owned and operated by Hubbard. Fleming and Smith were standing on the ground between the crane and the truck, engaged in guiding the pipe from the truck to the ground where the pipe was to be placed. While so engaged in guiding the second unit of pipe being unloaded that day the crane's wire or cable came in contact up in the air with the electric lines of Florida Power, and the deadly electric energy was thereupon transmitted to the wire or cable, thence to the metal pipe, and finally to plaintiffs' decedents, who were standing on the ground as aforesaid.
The foregoing facts generally evolved from the pleadings and proofs at the trial. The two cases were tried together upon the basic issues of the alleged negligence of Florida Power, the negligence of decedents, the negligence of Hubbard Construction Company, and the negligence of the operator of the crane, jointly and severally, as being the proximate cause of the accident. After an eight day trial, the jury returned a verdict in each case for the defendant, Florida Power Corporation. Motion for new trial was filed by plaintiff in each case. The trial Court thereupon, by separate orders, granted the motions for new trial upon two stated grounds, as follows, viz:
"(1) That juror, ROBERT O. WEAVER, while qualifying to serve as a juror, misled the Court and counsel herein to the prejudice of the plaintiff both upon interrogation by the Court outside of the hearing of counsel and upon his voir dire examination.
"(2) The Court committed prejudicial error in admitting over Plaintiff's objections the Florida Industrial Commission Rule concerning notice to utilities, which materially and substantially altered the common law duty owed by the defendant to the plaintiff."
We are impelled to hold the eminent trial Judge in error as to each of the aforesaid two grounds relied upon, but before discussing them severally herein, we will make one observation pertinent to both grounds.
As this Court stated in Brown v. Fawcett Publications, Inc., Fla.App. 1967, 196 So.2d 465, "* * * [w]e are cognizant `a stronger showing is required to reverse an order granting a new trial than one denying it', Mead v. Bentley, Fla. 1952, 61 So.2d 428, but here, the point being one strictly of law uncontaminated with factual conflict, the area of discretion is drastically diminished if not entirely eliminated." Like holdings were by this Court in Ewing v. Miller, Fla.App. 1965, 172 So.2d 889, and the 1st District Court in Boutwell v. Bishop, Fla.App. 1967, 194 So.2d 3. We are of the view that the grounds granting new trial in the instant cases present essential questions of law and therefore come within the purview of the cases cited, rather than the general rule of Mead v. Bentley.
I. As to Juror Weaver. At the inception of the trial, preparatory to questioning *876 the prospective jurors upon their voir dire, the trial Judge invited any of the talismen present who felt they might not be able to serve to approach the bench, whereupon one Robert O. Weaver went up and tendered to the Judge a paper which turned out to be a subpoena for Weaver to appear as a witness in another separate civil case set to be tried following the instant cases, known as the Vatella case, also against the Florida Power Corporation. Weaver thought that his being subpoenaed in the Vatella case might conflict with his being a juror in the instant cases. The Judge explained to him that there would be no conflict of interest on Weaver's part and also that the two trials, both set before the same Judge, could not overlap.
Later, during interrogation of the veniremen on their voir dire, Mr. Weaver was called for questioning. The trial Judge asked him the stereotyped initial question if he knew of any reason why he could not fairly try the case, and Weaver replied:
"Not offhand, Your Honor, other than that fact that there was a question brought up to you, the fact that did I know an attorney. Well, I do not know an attorney in here, personally, but I know of him. Whether that has any bearing upon it  ."
Whereupon the Judge called respective counsel to the bench and the following discussion was had out of hearing of the prospective jurors:
"THE COURT: This is a very unusual situation, fellows. Mr. Weaver  you know I have two trials in a row here against Florida Power, this one and next week I am scheduled to try the Vatella case. Well, Mr. Vatella was employed with this tree-clearing company, Florida Tree Service. Mr. Weaver used to be a supervisor of Florida Tree Service and so he is no longer  he has received, from plaintiff's counsel, Nichols, Gaither, Green and all a subpoena duces tecum which he showed me this morning. He is to report here for next week's case and wondered if he were chosen for this case, he was wondering if it ran into next week would he be able to serve and I explained that we can't be trying both cases, can't start that one until we finish one.
"MR. MANN: He can be dismissed for cause.
"THE COURT: I don't know as to cause.
"MR. MANN: He was subpoenaed by plaintiff's counsel against the Power Company for the following Power case.
"THE COURT: I know. The subpoena merely was because he was custodian of records, the supervisor and I think it has to do with time worked and so forth. He wasn't at the scene. He was merely an office employee in charge of records and that is what the subpoena duces tecum is for, for him to bring records, such as he has, for the purpose of identifying them and as evidence of the work and times and so forth.
"MR. MANN: I would like to move the Court to excuse him for cause.
"THE COURT: Well, for cause? He said he wouldn't  he said he has no interest in the case.
"MR. PERENICH: Judge, unless it is shown he is going to be prejudiced I think he should be permitted to serve on the Jury.
"THE COURT: That is true.
"MR. PERENICH: Let's see what he says.
"THE COURT: I asked him if he knew counsel for either party and he doesn't. He doesn't know you are representing Florida Power in the next case.
"MR. MANN: I see.
"THE COURT: He doesn't know that.
"MR. MUSCARELLA: He indicated he knew somebody.

*877 "THE COURT: Neither of these but he knows  he doesn't know any of you people, any of you.
"MR. MANN: Do you feel he should be excused if there is a likelihood we might go over?
"THE COURT: I don't see why, for cause. He has no interest.
"MR. MANN: For cause on the grounds there is a great likelihood  (interrupted).
"THE COURT: We can't start the next case until this one is finished."
The questioning of Weaver was then resumed in open Court, with both respective counsel and also the trial Judge participating. During such examination Weaver, in answer to various questions by respective counsel, stated in effect: that he had been subpoenaed in the ensuing Vatella case, not as a witness to the accident, but merely to bring certain formal records to Court; that he was not acquainted with any of defense counsel but on at least one occasion had been to the office of plaintiffs' counsel to give a deposition in the Vatella case; that he knew some of the employees of Florida Power; that he had previously worked for Florida Forestry Corporation engaged in line clearance or trimming of trees, and which on occasions had been sub-contractor with Florida Power; that at the time of the instant trial he was a field buyer and supervisor in the lawn and garden department of Grant Company; that years before he had been self-employed in the nursery and tree surgery business in Pittsburg; and that he had had no connection with Florida Forestry for about five years previously.
Several times during the interrogation Weaver affirmed his impartiality as between the parties. During the questioning counsel for Florida Power suggested that Weaver "be dismissed for cause" by reason of his being subpoenaed by plaintiffs' counsel as a witness in the succeeding Vatella case, which suggestion was denied by the Court because Weaver "was merely an office employee in charge of records and that is what the subpoena duces tecum is for, for him to bring records." Florida Power counsel then formally moved that Weaver be excused "for cause", which the Court denied. Mr. Weaver was on the panel that was finally accepted by counsel for all parties in the two consolidated cases.
One of the grounds assigned by the trial Judge in his Order granting new trial was that Mr. Weaver had "misled the Court and counsel herein to the prejudice of the plaintiff", but we have searched the record in vain for any substantial support for such serious charge. Weaver was subjected to an unusually rigid interrogation by all counsel and also the Court and there was never any allusion of misrepresentation of fact on his part. He was subpoenaed as a witness only as a conduit for certain office records. The incident between Mr. Weaver and the trial Judge when the case was first called for trial, even though outside the hearing of respective counsel, was preserved by the Court Reporter and appears to have been nothing more than Mr. Weaver merely advising the Court of his subpoena duces tecum in the Vatella case, which was commendable on his part. And the trial Judge, with equally commendable candor, later informed respective counsel fully as to Mr. Weaver's situation, prior to his interrogation and later acceptance as a juror.
At the argument upon motion for new trial there was no evidence taken, nor any affidavits submitted, throwing any new factual light upon Mr. Weaver's status or impartiality as a juror. All that the Court had before it was what had originally transpired in the Courtroom and the Judge had already ruled on that by denying the motion by Florida Power's counsel for Weaver's dismissal for cause and also by denying the motion for mistrial when the same general subject matter was raised at the conclusion of all the testimony. So, in effect, the trial Judge just merely changed his opinion as to whether Mr. Weaver had misled the Court and counsel and whether plaintiffs had been *878 misled, without anything more to go on than what he had already ruled upon. In our opinion, the record lacks sufficient basis for such change of ruling.
The rule is that there must be a reason in law for a trial Judge's setting aside a verdict and granting a new trial, otherwise the Judge invades the province of the jury. Smith v. Jackson County, 1938, 134 Fla. 354, 183 So. 738. The power of a trial Court to grant a new trial should be exercised cautiously and only after careful consideration of all the evidence in the aspect most favorable to the party in whose favor the verdict was rendered. Wolkowsky v. Goodkind, 1943, 153 Fla. 267, 14 So.2d 398. Ely v. Atlantic Coast Line R. Co., Fla.App. 1962, 138 So.2d 521. A claim of a juror's prejudice cannot be grounded solely upon speculation or conjecture. Mizell v. New Kingsley Beach, Inc., Fla.App. 1960, 122 So.2d 225.
It is concededly true that a trial Court has broad judicial discretion in the matter of setting aside a verdict and granting a new trial but it must be predicated upon the proposition that error is shown to have been committed during the trial or some injustice done to the moving party. Seaver v. Stratton, 1938, 133 Fla. 183, 183 So. 335. And "judicial discretion", as used here, is not an unabridged power by which a Judge may set at naught the rights of the parties to a cause and define them in accordance with his current opinion, but is a discretion guarded by the legal and moral convictions that mold the acceptable concept of right and justice. Albert v. Miami Transit Co., 1944, 154 Fla. 186, 17 So.2d 89.
A new trial should be granted only when substantial rights have been so violated as to make it reasonably clear that a fair trial was not had. Cobb v. Brew, Fla.App. 1963, 155 So.2d 814; Bell v. Tarvin, Fla.App. 1964, 163 So.2d 300. More specifically, even "[i]rregularities in the drawing, summoning, returning, selection, swearing, and impanelling of the jury panel ordinarily are not grounds for a new trial at least where no objection thereto was offered and no injury is shown to have resulted therefrom". 66 C.J.S. New Trial § 21, page 112. And in the same work it is held that "it is not ground for a new trial that a juror was not qualified or was incompetent unless bias or prejudice appears"; and that "an objection to a juror that would have been good cause for challenge on his voir dire examination is not necessarily ground for new trial. Generally such an objection is insufficient on a motion for a new trial unless it shows probable partiality on the part of the juror * * *". 66 C.J.S. New Trial § 22, page 113. In the instant case the only objection to Weaver sitting as a juror was, peculiarly enough made by counsel for Florida Power and not by any of counsel for plaintiffs.
In Seay v. State, 1939, 139 Fla. 433, 190 So. 702, the Supreme Court held that 
"After the rendition of an adverse verdict, it is too late to be heard on the question of a legal disqualification of a juror, in the absence of proof of fraud, surprise or other conduct on the part of a juror which in law may amount to bad faith."
We must hold that, in the light of the record before us, it was not ground for a new trial that Mr. Weaver sat as a juror.
II. Admission in Evidence of Rule 4.03 of the Florida Industrial Commission 
Under F.S. Section 440.56, F.S.A. the Florida Industrial Commission is given power and authority to "prescribe what safety devices, safeguards or other means of protection shall be adopted for the prevention of accidents in every employment or place of employment * * * and to make, amend, or repeal reasonable rules for the prevention of accidents * * *". Pursuant to this statutory authority, the Commission has adopted and promulgated certain rules and regulations known as Rules 4.01, 4.02, 4.03, 4.04, and 4.05 which were in effect on the day of the accident. *879 These rules were "Regulations for use of cranes, draglines and similar equipment near power lines" and were so designated and entitled as officially filed in the office of the Secretary of State pursuant to F.S. Section 120.011 et seq., F.S.A.
Rule 4.01 sets forth the general purpose of the rules, provides definitions for the various terms and areas of coverage of the rules, and contains other general provisions, all of which show clear application of the rules to the physical facts existing at the time and place of the accident here involved. Rules 4.04 and 4.05 have to do respectively with "warning signs" and "special precautions" and are not here apposite.
Rules 4.02 and 4.03 are the rules pertinent to the question here involved. Rule 4.02 provides in substance that no contractor shall erect or operate any working equipment in close proximity to any high-voltage power lines unless danger from such lines has been "effectively guarded against" by either (1) the erection of mechanical barriers to prevent physical contact with high-voltage conductors; or (2) de-energizing and grounding the high-voltage lines; or (3) installing an insulated cage-type guard or protective device about the boom or arm of the equipment, and, where the equipment has a lifting hook device, "equipping all lifting lines with insulator links on the lift hook connection".
Rule 4.03 provides in haec verba as follows:
"Notification to utilities and arrangement for safeguards:  Where the contractor desires to have the utility effectuate the safety precaution provided for by Paragraph 2 of Section 185S-4.02(a) hereof [the de-energizing and grounding of high-voltage lines], the contractor shall request the utility to do so by notification in writing on forms approved by the Florida Industrial Commission. The utility and the contractor shall cooperate fully to eliminate the existing hazards for the protection of workers and the elimination of accidents."
The admission in evidence of Rule 4.03 aforesaid was deemed "prejudicial error" by the trial Judge in his Order granting new trial and was the second ground assigned as the basis for the order. We find as a matter of law the trial Judge's original admission of the rule in evidence to have been eminently correct and to provide no sufficient cause for a new trial.
The circumstances under which Rule 4.03 was finally allowed in evidence are interesting. Witness J.W. Keel, district manager for that area of Florida Power, testified that on June 4, 1963, the date of the accident, and prior to that time, his office had received no notification in any manner "concernng the use of cranes" in the construction work going on in the vicinity of the accident; nor had Florida Power received any request for de-energization or the shutting off of power. An attempt was then made by Florida Power's counsel to put in evidence a "Notice to Utility" form promulgated by the Florida Industrial Commission pursuant to Rule 4.03, but the Court denied the proffer.
Later, during the testimony of witness Woodrow Wilson Hicks, who was operating the crane for Hubbard Construction Company at the time and place of the accident, it was established that his crane was not equipped with an insulated hook, which he described as "a safety hook device we use on what we call a horse line and attach the load under that for protection of high voltage lines", although such safety hooks were available to the Construction Company.
Thereafter, witness Gary Roig, a crane carrier operator for Hubbard at the time and place of the accident, estimated there was a distance of only five or six feet between the boom of the crane and the nearest live electrical line of Florida Power. He described a safety hook as "a device put on between what you are picking up *880 and the cable; so if you were to touch any lines or anything endangering the lives of anyone it would take all the punishment itself". He testified that up to the time of the accident a safety hook had not been installed on the cable to the crane.
Thereupon Florida Power proffered in evidence Rules 4.01, 4.02, 4.03, and 4.05 of the Commission's rules. Plaintiff objected, and after considerable colloquy, the Court reserved ruling, holding that 
"it would first have to be shown that these standards (rules), against which the employer's (Hubbard's) negligence would be measured, are those which are generally recognized in the community by the industry or profession as being reasonable standards of care. * * * The predicate would first have to be laid to show these regulations are the general accepted standards of care in the profession of heavy industry business in the community involved. So I am going to reserve ruling on the proffer until such a predicate is laid".
After further extensive testimony was adduced, showing that road contractors in Florida generally followed the rules and regulations of the Florida Industrial Commission regarding cranes, the rules in question, excepting Rule 4.03, were admitted in evidence, "for whatever probative force the Jury wants to give it."
The admission of these rules into evidence was during presentation of Florida Power's case in chief and were so admitted solely for the purpose of showing the standard of care and responsibility placed upon Hubbard Construction when utilizing and operating cranes in close proximity to electric power lines. They were neither offered nor received to show any standard of care or responsibility on the part of Florida Power. Counsel for plaintiffs did make an attempt upon cross-examination of witnesses for Florida Power to show that such rules imposed requirements and responsibilities on power companies as well as the contractor, but the trial Judge refused to permit such showing as not being within the scope of direct examination.
Florida Power in due course rested its case in chief, whereupon the plaintiffs, in presentation of their case on rebuttal, sought to show affirmatively that the rules so admitted placed responsibilities on electric power companies, but in so doing went beyond the rules admitted in evidence and brought in the substance of Rule 4.03. Thus plaintiffs' counsel asked witness Jack Davis,
"Now, Mr. Davis, * * * in addition to responsibilities that you outlined yesterday, that these rules lay on a contractor, they also lay responsibilities, specific rules on the power companies do they not, sir?",
to which the witness responded,
"In that particular section of the Code, they require the utility, upon notification, to cooperate with the contractor in applying whatever necessary measures are required by the circumstances." (Emphasis supplied).
The witness was here referring unquestionably to Commission Rule 4.03. In the next breath, plaintiffs' counsel asked the witness Davis,
"Isn't it true, sir, under these rules the Power Company has the duty to either insulate these lines or to isolate them?"
and the witness replied,
"Upon request of the Contractor they are and you will find it in here, requested to cooperate and effectuate, assist in effectuating any one of these things. They are required to cooperate and assist to effectuate any one of these three." (Emphasis supplied).
No motion to strike either of the aforesaid answers was made and, as stated, it is clearly apparent the witness was referring to Commission Rule 4.03. Thus the evidentiary door was opened by plaintiffs to introduction by Florida Power, in surrebuttal, *881 of Rule 4.03 itself as a direct reply to the evidence adduced by plaintiffs in rebuttal. And this, regardless of whether the Court had theretofore properly or improperly denied Rule 4.03 into evidence.
Strengthening the Power Company's position on this procedural point is the fact that, before Rule 4.03 was finally admitted, the witness Davis was extensively cross-examined by the Power Company's counsel and also by the trial Court, with direct reference to said Rule 4.03 and its conjunctive relationship with Rule 4.02. For example, during further cross-examination of the witness Davis by Florida Power's counsel, the following was elicited.
"Q Now, as a matter of fact, Mr. Davis, application of Rule 4.02 dealing with de-energizing high voltage lines must be read in conjunction with Rule 4.03, dealing with notification of utilities and arrangements of safeguards, doesn't it?
"A That is correct.

"Q And that notice is from the contractor, isn't it?
"A That is correct.

"Q And it is supposed to be given to the Power Company, isn't it?
"A That is correct.

"Q In order to give them an opportunity to get out there and take the proper safeguards if they find an unsafe condition on the roadway, isn't that true?
"A That is true.
"Q And that notice requires the contractor, where he desires to have the utility effectuate the safety precautions provided for by paragraph two of Section 185S, 4.02A, the contractor is supposed to request the utility to do so by notification in writing, isn't that so, sir?
"A That is so." (Emphasis supplied).
And, under questioning by the trial Judge, the same witness testified:
"THE COURT: You testified, as I recall, that before, in response to his question, that your duties under Rule 4.02A was predicated upon another rule, to-wit the notice rule which is 4.03. You had mentioned that rule earlier in which you said that that rule requires power companies, when they receive this notice, to full cooperate.
"THE WITNESS: That is true.
"THE COURT: Correct?
"THE WITNESS: Correct.
"THE COURT: In providing the safety factors outlined in 4.02A?
"THE WITNESS: That is correct." (Emphasis supplied).
And, as before, none of this latter examination was objected to or moved to be stricken by plaintiffs' counsel. Thereafter, in view of the aforesaid developments, the trial Judge, upon Rule 4.03 being re-offered in evidence, granted said proffer and admitted the Rule.
We are of the opinion that Rule 4.03 was properly admitted in evidence because, first, it should have been admitted on its merits at the time the other rules were allowed in because they were all interrelated, secondly, even if otherwise inadmissible it became admissible when plaintiffs voluntarily opened the door by introducing testimony as to the substance and content of the Rule, and lastly, plaintiffs failed to object or move to strike the testimony which qualified it as admissible evidence.
Plaintiffs urge the contention that, because they put on the witness Davis as an adverse or hostile witness, they were not "bound" by his testimony. But it is not a question of plaintiffs being "bound" by such testimony. The vital question here is the admissibility of evidence by the adverse party as a result of his being called as a witness. The very rule that sanctions the calling of a hostile witness permits cross-examination by the adverse party *882 on the subject matter of his original examination as a hostile witness and also permits new evidence to contradict or impeach him. See Rule 1.37(a) Rules of Civil Procedure, 30 F.S.A. And if he can be contradicted or impeached by his testimony as a hostile witness, then certainly the door would be open for other testimony to support him. This is exactly what happened here.
Facts established by the testimony of a witness, whether a party or otherwise, and not refuted, constitute a part of the facts of the case, the same as any other fact in evidence. Gordon v. Sutherland, Fla.App. 1961, 131 So.2d 520. The rule of law applicable here is succinctly stated in 98 C.J.S. Witnesses § 400, beginning on page 183, as follows:
"The cross-examination of a party who has been called as a witness by the adverse party is governed by general rules relating to cross-examination of witnesses. Although the scope of such cross-examination is a matter for the discretion of the trial court, an adverse party witness may be cross-examined generally as to all matters relating to which he has been interrogated on direct examination, but the witness may be thus cross-examined only to that extent. He may properly, on cross-examination by his own counsel, be given an opportunity to explain or correct the testimony given by him under the examination by his adversary, to disclose further particulars about any matter or transaction concerning which he was so examined, or to bring out the whole of such transaction." (Emphasis supplied).
So Rule 4.03 was correctly admitted.
And it logically follows that if Rule 4.03 was properly admitted, then the granting of a new trial after verdict was not warranted based upon such admission. This was the second of the two grounds in the trial Judge's order and they are the only propositions open for consideration by this Court on this appeal. F.S. Section 59.07(4), F.S.A., provides:
"(4) New trials, review of order granting.  In every case in which the trial court shall enter an order granting a motion for a new trial, the trial judge shall indicate in the order granting said motion the particular ground or grounds upon which said motion was granted, and upon appeal from any such order, if taken under the statutes providing for appeal from orders granting new trials, no other grounds than those specified by the trial judge, as a basis for the order granting the new trial, shall be considered as arguable upon said appeal."
We therefore must reverse the Order granting a new trial, thus finally disposing of the cases favorable to the Power Company, but in doing so our personal human sympathies go out to the plaintiff widows and their families. Decedent Don Fleming was a 25 year old professional football player with the Cleveland Browns and formerly a football "great" with the University of Florida, doing summer work with Hubbard Construction. He left a 25 year old widow and an infant son less than two years of age. Decedent Smith was a colored man, leaving a 38 year old widow and nine children, aged from one year to twenty-three years. They met horribly tragic deaths pursuing an honorable calling, under seemingly avoidable circumstances.
But the cases were tried by competent counsel and before an able Judge. And a jury of peers, after a fair and painstaking trial, decided against liability on the part of the Power Company. Such is the course of our American Jurisprudence as we know it. The jury system is the foundation stone of our whole judicial concept. It is designed to provide all persons with a fair factual determination before judgment. So, while our compassions are with the loved ones of the departed, we would be remiss in our duty if we failed to do full obeisance to the laws *883 of the land, however harsh they may sometimes be.
The Orders appealed from in the two consolidated cases are therefore severally reversed with directions to enter final judgments in favor of defendant corporation.
Reversed.
LILES, C.J., and SHANNON, J., concur.