814 So.2d 334 (2002)
Lucille ROBERTS, personally and as Personal Representative of the ESTATE OF Frederick ROBERTS, Petitioner,
v.
Francisco TEJADA, M.D., Francisco Tejada M.D., F.A.C.P., P.A., and Francisco Tejada M.D., F.A.C.P., P.A. d/b/a American Oncology Centers Inc., Respondents.
No. SC00-1080.
Supreme Court of Florida.
February 21, 2002.
Rehearing Denied April 3, 2002.
*335 David Kleinberg of Gaebe, Murphy, Mullen & Antonelli, Coral Gables, FL, for Petitioner.
Shelley H. Leinicke of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, FL, for Respondents.
*336 LEWIS, J.
We have for review Tejada v. Roberts, 760 So.2d 960 (Fla. 3d DCA 2000), which expressly and directly conflicts with this Court's opinion in De La Rosa v. Zequeira, 659 So.2d 239 (Fla.1995). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

MATERIAL FACTS
After the death of Frederick Roberts due to liver cancer, the widow and personal representative of the decedent's estate, Mrs. Roberts ("Roberts") sued Dr. Tejada ("Tejada"), alleging negligence in the treatment of Mr. Roberts' cancer. During voir dire questioning of the venire, the trial judge initially stated:
I'll ask you ... have you been a party to a lawsuit. What I mean by that is, have you brought a court action against somebody else seeking money from them or if someone brought an action against you, seeking money from you. And it could be because of an auto accident, breach of contract, many other things, divorces and what not. But let me know if you have been a party, a plaintiff or defendant, in a case yourself or maybe a close family member has been involved in a lawsuit. Let me know that as well.
Thereafter, immediately before Roberts' counsel questioned each potential juror, he said:
He [the judge] asked you if you had ever been a party to a lawsuit. And again, the reason isn't to embarrass you, because you know when you were in the lawsuit, you may have won and you thought it was great or you lost, thought it stunk. Or you may have been a defendant and think all the plaintiffs are out to get their money or you may have been a plaintiff and thought otherwise.
It's really important what you bring to the stand on this issue. So I'm going to ask you, each one of you by name whether or not you have ever been a party to a lawsuit. And I mean, any kind of lawsuit, a divorce, a collection of a debt, a breach of contract, an assault and battery, an auto accident, a defective product, a medical negligence case, such as this case, a divorce, anything at all.
During the course of questioning, Ms. Fornell and Ms. Guerrero failed to disclose any prior litigation history. In fact, Ms. Fornell, in responding to the trial court's inquiry regarding whether she had ever been a party to a lawsuit, affirmatively responded, "Never," and both Ms. Fornell and Ms. Guerrero, in answering the same question later posed by the plaintiffs counsel responded, "No." However, other prospective jurors did discuss their involvement in lawsuits: two individuals disclosed that they had been involved in legal actions involving automobile accidents; one person spoke about a personal injury action which had been brought by his grandmother; and four others disclosed that they had been or were currently involved in some type of domestic dispute proceedings. None of the jurors who disclosed any sort of litigation history were selected to sit on the jury and challenges were utilized to excuse individuals who had previously been involved in legal actions and domestic disputes.
Following the jury verdict in Tejada's favor, Roberts filed a motion for new trial and/or mistrial. As grounds for the motion, Roberts cited the improper use of closing argument (an asserted "Golden Rule" violation) and witness testimony (of both the defendant and his experts). Before the trial court considered the motion, Roberts searched the official public records index maintained by the Miami-Dade County Clerk of Courts, and amended her motion to include the information obtained *337 from that search. Specifically, Roberts stated that she had "come to learn" that certain jurors had "been involved in prior litigation matters, which were not disclosed during the voir dire process," listing Thelma Fornell (five cases), Paula Guerrero (two cases) and Jessica Martinez (four cases). Roberts then requested a jury interview. The trial court required more information before it could render its final decision, and denied the request to interview jurors without prejudice. Instead, it entered an order allowing the parties access to jury pool information regarding name, address, driver's license, and date of birth.
After having acquired the jury pool information to which the court afforded access, Roberts conducted an "AutoTrak" computerized background check using the jurors' names. That search identified six licensed Florida drivers with Guerrero's name, five of whom were registered as Miami Dade County residents. Thereafter, Roberts reviewed the court index to identify cases involving the jurors, and attempted to obtain individual court files. Some records were unavailable entirely, while others were available at the Dade County Courthouse, in off-site storage, at the Metro Justice Building, or at the Coral Gables Court Annex.
Roberts then filed a second amended motion for relief. She claimed that a new trial was warranted based upon the failure of certain jurors to disclose, during the voir dire process, their involvement in prior litigation. The public records for Miami-Dade County appeared to show that, in 1996, "Paula C. Guerrero" had filed a domestic violence petition, and had shortly thereafter voluntarily dismissed the action. The "AutoTrak" search also identified two 1995 cases involving "Paula Guerrero"; however, confirmation was unavailable that the juror was the same person identified in Roberts' search.
The public records also appeared to disclose that Ms. Fornell had been a party in two civil actions over twenty years ago, one as a defendant in a case filed in 1973, and the other as a plaintiff in an auto negligence case filed in 1975. The 1973 small claims case had been resolved by stipulation about six months after filing, and no final judgment was ever entered. The 1975 action was actually initiated by Fornell and other members of the Fornell family against Florida Ranch Enterprises.
The trial court carefully considered the three motions, which had been prepared and filed over a ten-month period, and reviewed the record of litigation documents. Based upon this review, it made, inter alia, these findings of fact:
[T]hese jurors failed to disclose these prior litigation matters despite being asked, without ambiguity, whether such matters existed.
[T]he failure to disclose such information was not and could not possibly be attributed to any lack of diligence of the Plaintiff. In point of fact, this court specifically finds that counsel for the plaintiff specifically asked for this information in an unambiguous fashion.
[M]oreover, this court finds that the litigation history of the actual jurors herein is relevant and material to their jury service notwithstanding the fact that the history may involve a different type of case and may be considered remote in time.
After considering the applicable case law, the trial court granted Roberts' motion and ordered a new trial. The court stated during the pertinent hearing:
THE COURT: Under the analysis of the cases that are out there, I have to agree with the Plaintiff. I don't think I have any choice.

*338 I think that I can find from this record that [juror Fornell] is personally named in at least two cases, and even though they may be remote, 20 years remote, it doesn't seem to matter, because it could have led to legitimate inquiry by Plaintiffs counsel during voir dire that could have led to relevant information about the juror, and I think I can find from this record that [juror Guerrero] was the petitioner in the domestic violence case. A named petitioner.
She sought relief in a court of law, even though in a few days it was dismissed, and I think I can find from this record that both Fornell and Guerrero failed to disclose that. I'm not finding they were untruthful, I'm simply finding that that information was not revealed during voir dire and that the Plaintiff made legitimate and, I think, adequate inquiry that should have elicited a response revealing that information.
I disagree with the Third District's rationale in this entire line of cases, that whether there is prejudice is basically irrelevant, and that whether there was ample evidence to support a verdict is essentially irrelevant.
They have pretty much statedand I have to follow a rule that if there was that juror information on prior litigation history is relevant and if there is an adequate inquiry and the information is not revealed, regardless of why, whether it is lack of knowledge, lack of truthfulness, just inaccuracy or forgetfulness, those reasons are irrelevant. The failure to reveal it is automatically grounds for a new trial.
MR. MCCOY: Are you making a finding with respect to the relevance of this information; first with respect to [juror Guerrero] and the petition for injunction in domestic violence court?
THE COURT: I personally wouldn't find that to be of such moment, that in and of itself, that it would fall under the litigation history gathered. However, the question by the Plaintiff during voir dire was broad enough that it should have elicited that response.
Certainly it should have at least elicited that she had been involved in a court case involving her boyfriend or whoever it was, a domestic violence situation, because whether you are looking at the petition she sought and initiated or you're looking at another criminal case where she was a victim, assuming she was, then all of those facts should have been elicited.
They were fair game for either attorney to go into, if they affected her opinions on being a juror in the case, and I think that the questions asked by Plaintiff's lawyer were adequate to have required a response, a disclosure by the juror. I can't find any particular fault by either juror. I'm not attributing any bad motives to them, but the fact is that is irrelevant. I disagree with the Third District's rationale in this entire line of cases, that whether there was prejudice is basically irrelevant, and that whether there was ample evidence supporting a verdict is essentially irrelevant.
Hopefully, the Third DistrictI mean, we talk about opening a can of worms. I think the Third District is opening a can of worms, subjecting virtually every verdict that comes out to a subsequent investigation and challenge by the unsuccessful party. This works for the benefit of either side, as long as they're the loser, and I think it's wrong to do that without some showing of prejudice in the actual conduct of the trial, but that's the way the law stands right now, and I don't think I have a choice.
*339 The trial court did not find intentional concealment, stating, "concealment implies a conscious action by the juror, ... and I'm not finding it to be a conscious action."
Tejada appealed, arguing that the trial court had erred because: (1) "the court records were inconclusive and the evidence showed that the jurors had common names" and (2) the litigation was "remote" and "insignificant"; therefore, "there was no basis for determining that there was any concealment of a material fact by any juror or that there was any bias or partiality by any of the triers of fact."
The Third District reversed, finding that Roberts had "not given any particularized argument why Ms. Fornell's experience... could plausibly form the basis for a challenge for cause or a peremptory challenge." Tejada, 760 So.2d at 965. After analyzing the voir dire questions, the appellate court also found that they "did not call for disclosure of a domestic violence petition" by Ms. Guerrero, and thus, "there was no concealment." Id. at 964. Lastly, the appellate court addressed the diligence requirement of the three-pronged De La Rosa test:
Although not raised by the appellant, we conclude that the diligence requirement was not satisfied in this case.
. . . .
We therefore hold that the time to check the jurors' names against the clerk's lawsuit index is at the conclusion of jury selection. If a party does not request the opportunity to make the record search, then that litigant will not be heard to complain later about nondisclosure of information which could have been disclosed by reference to the clerk's index.
760 So.2d at 966.
Roberts filed a motion for rehearing, rehearing en banc, clarification, and certification. In a clarified opinion, the appellate court reiterated: "We do not say that civil trials must be held up for lengthy periods in jury selection, but we do say that the time to consult readily available public records is before, not after, the fact." 760 So.2d at 967.[1]

ANALYSIS
In De La Rosa v. Zequeira, this Court established the three-prong test which applies in cases of juror nondisclosure. There we held:
In determining whether a juror's nondisclosure of information during voir dire warrants a new trial, courts have generally utilized a three-part test. First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence.
659 So.2d at 241 (citations omitted).
Pursuant to De La Rosa's first prong, the complaining party must establish not only that the nondisclosed matter was "relevant"as all prior litigation history isbut also that it is "material to jury service in the case." In De La Rosa (in which the jury had rendered a verdict in favor of the defendant), this Court found the challenged juror's extensive prior litigation historypredominantly as a defendant *340 to be material, acknowledging similarities with Bernal v. Lipp, 580 So.2d 315 (Fla. 3d DCA 1991):
Here, as in Bernal [v. Lipp, 580 So.2d 315 (Fla. 3d DCA 1991)], the juror's involvement in six prior lawsuits as both defendant and plaintiff is material. He was a defendant in five prior lawsuits brought by creditors; his involvement may well have affected his point of view in this action. Moreover, in view of the juror's involvement in so many lawsuits, it is difficult to believe he simply did not think the questions posed by counsel applied to him. Bernal should not be viewed as distinguishable from this case on the ground that this juror's involvement was not in a personal injury action: A person involved in prior litigation may sympathize with similarly situated litigants or develop a bias against legal proceedings in general. In these circumstances, counsel must be permitted to make an informed judgment as to the prospective juror's impartiality and suitability for jury service.
659 So.2d at 241 (quoting Zequeira v. De La Rosa, 627 So.2d 531, 533-34 (Fla. 3d DCA 1993)) (Baskin, J., dissenting). In Birch v. Albert, 761 So.2d 355, 359 (Fla. 3d DCA 2000), another medical malpractice case, the appellate court also addressed the issue of materiality of a juror's nondisclosed information.[2] In so doing, it interpreted De La Rosa's direction that the information must "be relevant and material to jury service in the case" to mean that prior litigation history was not, in all cases, necessarily material:
Finally, here, we conclude that the materiality prong of the three part test has not been met. The test is not simply whether information is relevant and material in general, but whether it is "relevant and material to jury service in the case." De La Rosa v. Zequeira, 659 So.2d at 241(emphasis added). [Note 9] Materiality must be analyzed on a caseby-case basis, and we clarify that Wilcox [v. Dulcom, 690 So.2d 1365 (Fla. 3d DCA 1997)] does not mandate an automatic new trial whenever there has been a nondisclosure of litigation information. Based upon the facts and circumstances of this case, we find the prior lawsuit was not material. See Ford Motor Company v. D'Amario, 732 So.2d 1143 (Fla. 2d DCA), review granted, 743 So.2d 508 (Fla.1999). [Note 10]
[Note 9.] As explained by the Florida Supreme court in De La Rosa, materiality is only shown where the "omission of the information prevented counsel from making an informed judgmentwhich would in all likelihood have resulted in a peremptory challenge." De La Rosa v. Zequeira, 659 So.2d at 242. See also, Bernal v. Lipp, 580 So.2d at 316-317 (same); Blaylock v. State, 537 So.2d at 1106-1107 (response on voir dire is only material "if it is so substantial and important that if the facts were known [the *341 moving party] may have been influenced to peremptorily exclude the [juror] from the jury.").
[Note 10.] In Ford Motor Co. v. D'Amario, a juror's failure to disclose three prior workers' compensation claims and a $1,000 lawsuit over a real estate transaction was found not material in a crashworthiness case against a car manufacturer. The Second District held the plaintiffs were not entitled to a new trial because "these matters are not material as they are remote in time, small in amounts, and asserted by one seeking monies, to-wit: one customarily favorable to a plaintiff." Ford Motor Co. v. D'Amario, 732 So.2d at 1146.
761 So.2d at 358-59.
In its opinion below, the Third District similarly analyzed the matters which juror Fornell did not disclose in the context of this medical malpractice action:
Turning to Ms. Fornell, we conclude that the nondisclosures were immaterial. She was allegedly named in two lawsuits over twenty years prior to jury selection in this case. One was a 1973 small claims matter in which she was a defendant, and the other a 1975 automobile negligence case in which she was a plaintiff. Both were resolved without trial. The point of asking about litigation history is to determine if the juror bears some animus about the litigation process, or about similarly situated litigants, which would adversely impact on the prospective juror's ability to consider the case fairly.
In this case the plaintiff has not given any particularized argument why Ms. Fornell's experience over twenty years ago as an auto negligence plaintiff, or small claims defendant, could plausibly form the basis for a challenge for cause or a peremptory challenge. At some point, past experience is simply too remote in time to have a material bearing on present jury selection. Whether Ms. Fornell's 1970's experiences in those cases were good, bad, or indifferent, twenty years is too far removed to be material under De La Rosa.

760 So.2d at 965 (citation omitted). To be material, a prospective juror's litigation history does not necessarily have to involve an action similar to the one in which he or she may be required to serve. See De La Rosa, 659 So.2d at 241 (recognizing that a person involved in prior litigation "may sympathize with similarly situated litigants or develop a bias against legal proceedings in general") (quoting De La Rosa, 627 So.2d at 533 (Baskin, J., dissenting)); Leavitt v. Krogen, 752 So.2d 730, 732 (Fla. 3d DCA 2000) ("The litigation history of a potential juror is relevant and material to jury service even if it involves a different type of case from that being tried.").
Nor does De La Rosa dictate that all prior litigation history (while relevant) is per se material. See Birch, 761 So.2d at 359 (clarifying that "an automatic new trial [is not mandated] whenever there has been a nondisclosure of litigation information"). As observed by the Fifth District in Garnett v. McClellan, 767 So.2d 1229 (Fla. 5th DCA 2000):
No "bright line" test for materiality has been established and materiality must be based on the facts and circumstances of each case. Leavitt v. Krogen, 752 So.2d 730 (Fla. 3d DCA 2000). Nondisclosure is considered material if it is substantial and important so that if the facts were known, the defense may have been influenced to peremptorily challenge the juror from the jury. James v. State, 751 So.2d 682 (Fla. 5th DCA 2000). See also De La Rosa (plaintiff entitled to a new trial where juror failed to disclose that he was a defendant in at *342 least six lawsuits; juror may sympathize with defendants or develop a bias against legal proceedings in general and the omitted information prevented counsel from making an informed judgment which in all likelihood would have resulted in a peremptory challenge); Bernal v. Lipp, 580 So.2d 315 (Fla. 3d DCA 1991) (plaintiff entitled to a new trial where juror failed to disclose that he had been a defendant in a personal injury case one year previously); Industrial Fire & Cas. Ins. Co. v. Wilson, 537 So.2d 1100 (Fla. 3d DCA 1989) (defendant and his insurance company were entitled to a new trial where juror failed to disclose that he had been insured by the company and that the company had denied his claim for benefits); Mobil Chemical Co. v. Hawkins, 440 So.2d 378 (Fla. 1st DCA 1983), rev. denied, 449 So.2d 264 (Fla.1984) (defendant was entitled to a new trial where juror concealed fact that she was related to plaintiffs family and had been represented by an attorney who had an interest in the case).
767 So.2d at 1230-31. The record here reflects that the trial court struggled with the issue of materiality, but confused the analysis with "prejudice," which is not a part of the De La Rosa test.
Lawyers representing clients in litigation are entitled to ask, and receive truthful and complete responses to, the relevant questions which they pose to prospective jurors. See Loftin v. Wilson, 67 So.2d 185 (Fla.1953) ("It is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact, nor concealing any material matter, since full knowledge of all material and relevant matters is essential to the fair and just exercise of the right to challenge either peremptorily or for cause."). They are entitled to evaluate this information in determining whether to seek to excuse prospective jurors on peremptory challenge or for cause.
Remoteness in time is one aspect to consider in determining the impact, if any, of a juror's prior exposure to the legal system on his present ability to serve in a particular case. See, e.g., Leavitt, 752 So.2d at 732 (Fla. 3d DCA 2000) (concluding that the juror's undisclosed collection claim, which had arisen more than ten years previously, was not material); D'Amario, 732 So.2d at 1146 (Fla. 2d DCA 1999) (determining that undisclosed litigation regarding collection claims which occurred almost twelve years prior to the present lawsuit were remote and not material), quashed on other grounds, DAmario v. Ford Motor Co., 806 So.2d 424 (Fla. 2001); Bernal, 580 So.2d at 316 (determining that the plaintiff was entitled to a new trial where a juror failed to disclose that he had been a defendant in a personal injury case one year previously). Other factors may include the character and extensiveness of the litigation experience, and the juror's posture in the litigation. See De La Rosa, 659 So.2d at 241 (holding that the trial court did not err in granting a new trial based on juror misconduct where the foreman had not responded to inquiries in voir dire about prior "lawsuits," even though he had been a party in six cases, involving debt collections and the dissolution of his marriage); Garnett, 767 So.2d at 1231 (recognizing as pertinent to its De La Rosa analysis the fact that, because the juror had been in the position of being, in effect, a potential "defendant" in his prior insurance claim experience, it appeared "likely that he would have been more sympathetic to the defense than to the plaintiff"); Bernal, 580 So.2d at 316 ("For a plaintiff in a personal injury case, the failure of a juror to disclose that he had been a defendant in a personal injury *343 case one year previously would be material.").
Nonetheless, trial counsel must be able to explore the potential impact of a prospective juror's litigation history fully on voir dire, and to ascertain what views prospective jurors may have formulated as a result of such experiences. It is unclear that these factors were taken into consideration in evaluating the materiality of juror Fornell's undisclosed litigation experience.
With respect to juror Guerrero, the Third District found that the question which counsel had asked on voir dire was not sufficiently clear to elicit the response which Guerrero failed to give; thus the "due diligence" prong of De La Rosa was not met.[3] The "due diligence" test requires that counsel provide a sufficient explanation of the type of information which potential jurors are being asked to disclose, particularly if it pertains to an area about which an average lay juror might not otherwise have a working understanding. Thus, resolution of this "diligence" issue requires a factual determination regarding whether the explanations provided by the judge and counsel regarding the kinds of responses which were sought would reasonably have been understood by the subject jurors to encompass the undisclosed information.
Here, the Third District determined that the questions asked were not fairly calculated to apprise the venire that legal actions in which money was not being sought should be included in their responses. See Tejada, 760 So.2d at 964. Specifically, the court stated:
The trial court and counsel framed the inquiry in terms of an action for damages. A petition for a domestic violence injunction is not an action for damages. We do not think that a reasonable juror would conclude that a petition for domestic violence amounts to a "lawsuit" for purposes of the voir dire questions that were asked. Indeed, it may not be clear to the average juror that a petition for domestic violence injunction is actually a civil, as opposed to criminal, matter. There was no concealment.
Id. It also suggested that, because the term "court action" is susceptible to various "lay" interpretations, the questions asked here may not have even fairly apprised the venire that they should disclose legal matters which were resolved outside of a courtroom setting (as was the case with the two matters from the 1970s with which juror Fornell was involved). Id. However, the Third District's opinion in Tejada fails to address that the record discloses that the questions posed here elicited information from four potential jurors (none of whom was selected to sit on the jury) regarding their involvement in domestic disputes. While the questioning may have been less than totally precise, in analyzing the failure of Guerrero to disclose her domestic violence petition, the Third District arrived at the wrong conclusion, simply substituting its determination for that of the trial judge on this factual question.
As we have emphasized, a juror's nondisclosure need not be intentional to constitute concealment. In De La Rosa, we approved and adopted Judge Baskin's dissenting opinion in Zequeira v. De La Rosa, 627 So.2d 531, 533-34 (Fla. 3d DCA 1993) (Baskin, J., dissenting), which addressed the notion of concealment, and we quoted from it in our own opinion:

*344 Assuming, arguendo, that the juror had no intention of misleading counsel, "the omission nonetheless prevented counsel from making an informed judgment which would in all likelihood have resulted in a peremptory challenge." Bernal, 580 So.2d at 316-17. The majority's holding that a juror's failure to answer counsel's question does not constitute concealment precludes collective questioning of jurors and will compel attorneys to obtain individual oral or written responses in order to fulfill the concealment prong of the Bernal test.
659 So.2d at 242 (quoting Zequeira v. De La Rosa, 627 So.2d at 533-34 (Baskin, J., dissenting)).
Of course, attorneys must be mindful in this process to ask such questions in terms which an average citizen not exposed to a panoply of legal processes would be capable of understanding. Trial counsel must take special care during the interrogation process to explain in a lay person's terms all the types of legal actions which may be encompassed by the term "litigation," or other similar words commonly used by attorneys. However, as determined by the trial court, the questions posed here met that test, and we agree that the record supports such conclusion.
During voir dire, while the trial court spoke of litigation in more general terms as bringing "a court action against somebody else seeking money from them or if someone brought an action against you, seeking money from you," Roberts' counsel clearly clarified the extent of inquiry. He explained that the subject matter addressed "any kind of lawsuit, a divorce, a collection of a debt, a breach of contract, an assault and battery, an auto accident, a defective product, a medical negligence case, such as this case, a divorce, anything at all." Although the specific words "domestic assault" or "injunction" may not have been voiced, the inquiry was sufficiently clear and broad to generate a truthful response, as the trial court concluded.
Further, the Third District's holding that, to satisfy De La Rosa's "due diligence" prong, trial counsel is required to conduct an investigation of the venire during trial is directly contrary to this Court's opinion in De La Rosa See De La Rosa, 659 So.2d at 242 (approving and adopting as its own the dissenting opinion in De La Rosa, and quoting Judge Baskin's observation therein, De La Rosa, 627 So.2d at 534, that "Bernal does not require counsel to discover the concealed facts prior to the return of a verdict"). Often, a search of the index may impose a futile burden, because it may fail to disclose prior litigation history which only a more extensive search of court files (some of which may be located in storage) would uncover. Even if an index may disclose some information, access to that important information may take additional time.
The Third District held that public records must be consulted at the time of jury selection, but then proceeded to note that chief judges should consider the problem and determine if it is feasible to have such information available. This internal contradiction reflects the vulnerability of the holding in the context of present reality. In a perfect world, access to the information would be immediately available in all courtrooms or actually provided as jury pool information. However, such circumstances do not presently exist and the diversity of resources available in our vast and diverse state to accomplish the task as ordered at this time creates an unacceptable burden that cannot have uniform application. Our court system does not yet have the uniform capacity to provide a readily accessible system for undertaking a review of the court index together with *345 ready access to the court files. Under present circumstances, the burden of imposing such a prerequisite to a later valid challenge to juror nondisclosure would be onerous, most particularly to sole practitioners representing clients in litigation. Therefore, that portion of the Tejada decision is specifically disapproved.[4]
We are not unsympathetic with the concerns of the Third District and the underlying philosophy which produced the result we must disapprove today. The issues we discuss here should be resolved at the beginning of the process, rather than as part of a retro-analysis. The court system is already overburdened and does not have the luxury of allowing jury verdicts to unravel or be subject to attack because of information which could have been reasonably obtained before the trial begins. Yet, this Court has set forth standards in De La Rosa which, if applied properly, will allow these difficult decisions to be made so that confidence and trust in the system will be maintained. Where possible, trial judges should allow counsel to check records, if such a request is made, and it can be done without unwarranted delay. Certainly a small delay at the beginning of a trial would be better than having to do a retrial of a case after it has been concluded.
The ultimate goal is to have all information properly disclosed during the jury selection process to afford confidence in the final product of trial proceedings and eliminate any unnecessary or properly avoidable extension or repetition of the proceedings. However, we cannot and must not sacrifice the integrity of the jury process in the name of expediency. We must also recognize that conditions should not be imposed that would require additional teams of investigative lawyers to become involved as a necessary ancillary activity to the trial process.
The trial lawyer cannot be expected to be both in the courtroom presenting a case and at the same time in a different location, or even in a different location of the same courthouse at the same time. Such would only serve to further complicate trial proceedings and increase the costs of participating in the system. While we do not encourage concepts that lead unnecessarily to repetitive proceedings, we must never fear reconsideration when the integrity of the jury process itself is subject to serious question.
Based upon the foregoing, the decision below is quashed and remanded with directions that the Third District remand the case to the trial court for reconsideration of the issues raised here consistent with the standards articulated in De La Rosa and this opinion. Whether the concealed information is material involves consideration of many factors. There is no per se rule that involvement in any particular prior legal matter is or is not material. This is a decision that should primarily be made at the trial level because materiality is fact intensive, and it is there that the dynamics and context of the entire trial process can best be evaluated. There may certainly be instances where such determination may be made as a matter of law based upon the particular circumstances, but appellate review must recognize the field of operation for determinations involving factual elements.
It is clear that nondisclosure along with partial or inaccurate disclosure is concealment *346 in the voir dire process. Again, as with the concept of materiality, analysis of a single question or series of questions may or may not provide an answer. The information disclosed by other prospective jurors may be as important in any particular inquiry by counsel, because the dynamics and context of the entire process may define the parameters of that which should be disclosed. It is the trial judge who must stay involved in and be attentive to the process to make this factual determination.
Finally, as we have outlined today, until our system can uniformly provide the facts required for the formulation of informed decisions which are necessary in the jury selection process, the rigid rule announced below, while well-intended and a laudable goal to be attained, cannot be implemented at this time. Further, it must be recognized that even the availability of a complete index along with access to court files for all Florida court matters would not resolve issues with regard to one's involvement in matters involving federal or foreign state jurisdictions.
These rules operate evenly for all participants in trial proceedings. The issue under these circumstances is not whether there may be evidence to support what a jury has done but, on the contrary, whether a proper jury was ever impaneled. This record demonstrates that there was confusion at the trial level with regard to the materiality element of the analysis, as was correctly recognized by the Third District. It is the trial court that should make this initial determination upon application of proper principles.
It is so ordered.
SHAW, HARDING, ANSTEAD, and PARIENTE, JJ., concur.
WELLS, C.J., dissents with an opinion, in which QUINCE, J., concur.
WELLS, C.J., dissenting.
I dissent and would approve the decision of the Third District reversing the order of the trial court and remanding to reinstate the jury verdict. I would do this on the basis that the district court was correct in respect to its analysis concerning juror Guerrero and juror Fornell. I consider the district court's statements in respect to due diligence to be dicta and would neither approve nor disapprove the particular procedure set out by the district court. I believe the district court's footnote 8, which states that the issue of availability of background records on prospective jurors should be examined by the chief judges, is helpful and that there should be such an examination.
I am concerned about what the present majority opinion does to the application of this Court's decision in De La Rosa v. Zequeira, 659 So.2d 239 (Fla.1995). In my view, De La Rosa involved an extreme situation in which the prospective juror had failed to affirmatively respond to counsel's questions about prior litigation when the subsequently obtained record revealed that he had been a named defendant in six lawsuits and had appeared at a deposition in aid of execution only six months before jury selection. However, the granting of a new trial on this basis must be restricted to extreme situations. The present case, with the juror's litigation involvement being in one small claims case and as a plaintiff in an automobile accident case and with both cases being over twenty years before the voir dire examination, does not even come close to being an extreme situation.
A De La Rosa new trial or, for that matter, De La Rosa rule-based juror interviews must be reserved for limited use because what is being impugned is the *347 sanctity of the jury's verdict. The attack is being made by the party who has lost and is by its very nature a backward-looking second guessing of the jury's decision. Whatever the undisclosed information is about a juror which is the subject of scrutiny, when such information is sought to be used to set aside the jury's verdict, the analysis is always ultimately speculative as to what the losing party and its counsel would have done with the information if it had been disclosed and as to the information's actual effect on the jury's decision.
For our system of jurisprudence to work, the heavy presumption must be that all inquiries, preparation, and investigation are on the front end of the process and that a jury verdict will be very difficult to attack. To allow a jury's verdict to be unraveled or even investigated as a matter of routine results in a lack of confidence in the jury system. Moreover, jurors should be safeguarded against the fear that jury service will expose them to endless investigations by losing parties or counsel.
For this Court to send this case back to the trial judge for a further review in respect to these jurors creates unnecessary uncertainty as to the proper result in this case. I conclude that the district court was correct in its analysis, and this case should simply become final with an approval. This is plainly the result that the trial court determined should be reached but erroneously believed it could not reach it. The district court has now corrected that erroneous belief.
I am particularly concerned about the effect of the statements which appear at pages 342 through 343 of the majority opinion, ending with:
Nonetheless, trial counsel must be able to explore the potential impact of a prospective juror's litigation history fully on voir dire, and to ascertain what views prospective jurors may have formulated as a result of such experiences. It is unclear that these factors were taken into consideration in evaluating the materiality of juror Fornell's undisclosed litigation experience.
It is predictable that these statements will be used as the basis for many post-verdict investigations. The majority creates substantial uncertainty as to what, if anything, would not be material.
QUINCE, J., concurs.
NOTES
[1] The Third District also suggested, in a footnote, "that the chief judges of the Eleventh and Sixteenth Judicial Circuits look into this problem and determine if this information may feasibly be made available at an earlier stage, such as on line in the courtroom or attached to juror questionnaires, if the litigants request it." 760 So.2d at 967 n. 8.
[2] In Birch, trial Judge Fredricka G. Smith, adhering to what she believed to be the precedent established in Wilcox v. Dulcom, 690 So.2d 1365 (Fla. 3d DCA 1997), had concluded: "Applying the Wilcox analysis to the facts in our case, I must grant the defendant's motion for new trial. However, if I were permitted to further analyze whether the juror's non-disclosure of her county court suit deprived the defendant of a fair and impartial trial, I would conclude that it did not." 761 So.2d at 357 n. 3. "Judge Smith acutely observed that it was unlikely defense counsel would have struck the juror even if the juror had disclosed the prior county court action, given the nature of the prior case and Ferrer-Young's generally favorable impression of doctors. Judge Smith further noted that the prior undisclosed lawsuit did not involve any controversy between Ferrer-Young and a doctor regarding doctor's services, and that Ferrer-Young in general expressed a favorable attitude toward doctors." 761 So.2d at 357 n. 4.
[3] The Third District observed; "Because there was no concealment by juror Guerrero, we need not reach the issue of materiality in her case." 760 So.2d at 965 n. 7.
[4] Accordingly, we similarly disapprove the decisions in Vanderbilt Inn on the Gulf v. Pfenninger, ___ So.2d ___, 2002 WL 459252 (Fla. 2d DCA February 8, 2002), Bornemann v. Ure, 778 So.2d 1077 (Fla. 4th DCA 2001), and Silva v. Lazar, 766 So.2d 341 (Fla. 4th DCA 2000), to the extent that they adopt the erroneous due diligence principle of Tejada which is disapproved here.