985 So.2d 558 (2008)
Dean C. McCAUSLIN, Appellant,
v.
Ryan O'CONNER, Appellee.
No. 5D06-3177.
District Court of Appeal of Florida, Fifth District.
February 8, 2008.
Rehearing Denied June 18, 2008.
Eric S. Block, of Law Offices of Eric S. Block, P.A., and John S. Mills, of Mills & Creed, P.A., Jacksonville, for Appellant.
Elizabeth C. Wheeler, of Elizabeth C. Wheeler, P.A., Orlando, for Appellee.
GRIFFIN, J.
Appellant, Dean C. McCauslin ["McCauslin"] appeals the lower court's order granting Appellee, Ryan O'Conner ["O'Conner"] a new trial due to purported jury misconduct.
*559 This case arises out of an automobile accident on September 9, 2001. McCauslin was a passenger in a vehicle owned by Robin Thornton. On Highway A1A in Vilano Beach, O'Conner's motor vehicle struck the rear of the Thornton vehicle.
McCauslin brought this action to recover monetary damages from O'Conner for injuries McCauslin claims to have sustained as a result of O'Conner's negligence. O'Conner admitted negligence but denied that McCauslin suffered any injury as a result of the collision.
A jury trial was conducted. The jury returned a verdict in favor of McCauslin in the amount of $889,531.77. Afterwards, O'Conner filed his motion for new trial asserting a number of grounds, including error by the court in granting McCauslin's multiple challenges of potential jurors for cause. A few days later, O'Conner filed a motion for jury interview. O'Conner claimed that five of the six jurors concealed information during voir dire. The motion alleged that, subsequent to trial, O'Conner found information that persons with the same names and birthdates as some of the jurors, or their family members, had been involved in one or more motor vehicle accidents with injuries. Accident reports for each of the named jurors were submitted as support for the motion.
A hearing on the motion for jury interview was conducted, after which the trial judge partially granted the motion. The trial court found that during voir dire, McCauslin's counsel inquired multiple times of the venire as to whether any of the potential jurors had been injured in accidents. The trial court determined that the questions posed during voir dire were "clear and unambiguous." Since McCauslin's counsel only questioned the venire on whether any of them had been injured in any kind of accident, the court limited post trial interviews to Jurors Rivers and Mitchell. Only those two accident reports documented injuries.
Post trial interviews of Jurors Rivers and Mitchell revealed that both had been previously injured in a car accident. Juror Mitchell testified that he was slightly injured in an accident in 1996 when a truck pulled across the road in front of him. He had a lawyer for that accident who helped him file an insurance claim. Juror Mitchell did not remember who asked questions during the voir dire process, nor did he remember the context of the questions. He was sure, however, that he remembered at the time having had the accident in 1996.
At Juror Rivers' interview, he testified he was injured as a result of a 1991 accident. He received physical therapy for about six months following the accident. He also could not remember whether McCauslin's counsel had asked any questions as to whether anybody had been injured. He also remembered at the time that he had been in the 1991 accident.
Based on these interviews, the trial court determined that a new trial was warranted because these two jurors did not disclose during voir dire that they had been injured in motor vehicle accidents. The court also found that:
The Defendant utilized his peremptory challenges to strike jurors who had been in past accidents. The fact that Jurors [sic] Rivers and Juror Mitchell had been in past accidents would certainly have been important to the Defendant's consideration in determining which jurors to strike.
The court reiterated a similar finding in the same order: "A number of jurors indicated that they had been injured, and many of these jurors were peremptorily stricken by the Defendant." As will be *560 discussed later, this finding was erroneous. O'Conner exercised three peremptory challenges, none of which was addressed to jurors involved in prior accidents.
On appeal, McCauslin argues that the trial court abused its discretion in granting O'Conner a new trial. He contends that the information omitted by Jurors Mitchell and Rivers was neither relevant nor material to their jury service. He further argues that O'Conner's counsel did not use due diligence in the selection of the jury.
Rule 1.431(b) of the Florida Rules of Civil Procedure authorizes the judge and trial counsel to question prospective jurors on voir dire. Courts have often said that the purpose of the voir dire examination is to assure the right to a fair and impartial trial by qualified jurors. See Ritter v. Jimenez, 343 So.2d 659 (Fla. 3d DCA 1977). Prospective jurors have a duty to give complete and truthful answers to the questions asked of them during voir dire. See Roberts v. Tejada, 814 So.2d 334, 342 (Fla.2002). Trial counsel and their clients are entitled to assume that a prospective juror will truthfully answer the questions posed by the court or by the parties' counsel. See Wilcox v. Dulcom, 690 So.2d 1365, 1367 (Fla. 3d DCA 1997). Concealment or nondisclosure of a material fact during voir dire may deprive a party of the right to exercise a challenge for cause or a peremptory challenge. See Smiley v. McCallister, 451 So.2d 977 (Fla. 4th DCA 1984). When a juror's lack of impartiality, honesty, and integrity becomes known, a new trial may be warranted, provided a three-pronged test is satisfied. De La Rosa v. Zequeira, 659 So.2d 239 (Fla.1995). The usual standard of review of a trial court's order granting a new trial because of juror concealment of information is abuse of discretion. See Vanderbilt Inn v. Pfenninger, 834 So.2d 202 (Fla. 2d DCA 2002).
In De La Rosa, the personal representative of the deceased's estate brought suit for medical malpractice. During voir dire, prospective jurors were asked whether any of them, their family members, or close friends had ever been a party to a lawsuit, as a plaintiff or as a defendant. Four jurors discussed litigation in which they had been involved, but one juror, later shown to have been the defendant in six lawsuits, remained silent. After a jury verdict for the plaintiff, the defendant moved for a new trial based on the juror's misconduct. The trial court granted the motion. The order was reversed by the district court, but the district court's decision was later quashed by the supreme court. The supreme court quoted the following from Loftin v. Wilson, 67 So.2d 185, 192 (Fla.1953):
[T]o ascertain whether a cause for challenge exists, and to ascertain whether it is wise and expedient to exercise the right to peremptory challenge given to parties by the law....
It is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact, nor concealing any material matter, since full knowledge of all material and relevant matters is essential to the fair and just exercise of the right to challenge either peremptorily or for cause. A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct, is prejudicial to the party, for it impairs his right to challenge.
De La Rosa, 659 So.2d at 241. The court then concluded that a juror's nondisclosure of information will warrant a new trial where the following three-part test is met:
(1) the facts must be relevant and material to jury service in the case;

*561 (2) the facts must be concealed by the juror on voir dire examination; and
(3) the failure to discover the concealed facts must not be due to the want of diligence of the complaining party.
Id.
Under the first prong of the De La Rosa test, the complaining party must establish not only that the undisclosed matter was "relevant," but also that it was material to jury service in the case. Materiality must be analyzed case by case. See Murphy v. Hurst, 881 So.2d 1157 (Fla. 5th DCA 2004). A juror's nondisclosure of information during voir dire is considered material if it is so substantial that, if the facts were known, the defense likely would peremptorily exclude the juror from the jury. James v. State, 751 So.2d 682 (Fla. 5th DCA 2000). See also Roberts, 814 So.2d at 340.
Here, the lawsuit and the omitted information both involved injuries in automobile accidents and so are related in a general sense. However, under De La Rosa, the complaining party must also establish that the information is material to jury service in the case. Omitted information has been considered relevant and material where it implies a bias or sympathy for the other side which in all likelihood would have resulted in the use of a peremptory challenge. See, e.g., De La Rosa; Bernal v. Lipp, 580 So.2d 315 (Fla. 3d DCA 1991); Industrial Fire & Cas. Ins. Co. v. Wilson, 537 So.2d 1100 (Fla. 3d DCA 1989); Mobil Chemical Co. v. Hawkins, 440 So.2d 378 (Fla. 1st DCA 1983).
In this case, nothing in the jury interview suggests that the omitted information would have caused Jurors Rivers or Mitchell to be biased or sympathetic towards McCauslin. Juror Mitchell testified that he was only slightly injured in the 1996 accident. For the 1991 accident, Rivers went to physical therapy for about six months after the 1991 accident and filed a worker's compensation claim. Both accidents were remote in time.[1] There was apparently no litigation, even in the worker's compensation case, and neither juror's involvement in the process was extensive. See Pereda v. Parajon, 957 So.2d 1194, 1197 (Fla. 3d DCA 2007).
Both men indicated during the interview that if they had understood that they were being asked whether they suffered any injury in any accident, they would have said so. Both jurors definitively stated that they could put any prejudices aside and decide the case on the greater weight of the evidence. Contrary to the findings contained in the appealed order, none of the three jurors O'Conner struck reported a prior accident or injury. Two had suggested that they believed most lawsuits had some merit. A third had agreed that mental anguish and loss of enjoyment of life was something for which she would award damages if the evidence supported it.
With respect to concealment, the second prong of the De La Rosa test, the Supreme Court in Roberts said:
It is clear that nondisclosure along with partial or inaccurate disclosure is concealment in the voir dire process. Again, as with the concept of materiality, *562 analysis of a single question or series of questions may or may not provide an answer. The information disclosed by other prospective jurors may be as important in any particular inquiry by counsel, because the dynamics and context of the entire process may define the parameters of that which should be disclosed.
814 So.2d at 345-46. Information generally is considered "concealed" for purposes of the three-part test where the information is "squarely asked for" and not provided. See Birch ex rel. Birch v. Albert, 761 So.2d 355 (Fla. 3d DCA 2000). In this case, since the questions at issue were asked by counsel for the Plaintiff McCauslin, he must now argue that his own questions were not clear and were susceptible to misinterpretation. He suggests the term "injury" was never defined and that his previous colloquy with other prospective jurors may have suggested that he was seeking serious injuries only. McCauslin also urges that because of the way voir dire unfolded, O'Conner's counsel should have inquired more precisely into the area of injuries. The questions posed of the venire do not appear to be ambiguous or misleading. For example, McCauslin's counsel asked:
[H]ave any of you ever been injured in any way, whether it be a car accident, a collision, a slip and fall?
However, under Roberts, the context in which that question was asked and the answers given also play a role in the analysis.
Here, the question was broad and was asked in response to prospective juror Glen's comment that he and his wife were seriously injured in an automobile accident. Juror Glen said that he felt he could not be fair because of the severity of his prior injuries. The venire may have assumed that the question was geared toward serious injuries that might affect their impartiality since such were the injuries that had generated the question. McCauslin's counsel inquired two more times whether anyone else had been injured in a car accident, and each time, two more potential jurors answered affirmatively, discussing in detail the severity of their injuries. One responded that he hit his lip and teeth. Another had even more severe injuries involving a brain shift and surgery.[2] Throughout this voir dire, a prospective juror's failure to answer a question manifestly did not mean that he or she had no information to impart.
From the cold record, we cannot glean the dynamics of this courtroom event, but it would be an understatement to say that this was not a highly participatory panel. Several individuals clearly had information that was not drawn out by the broad and general questions asked by plaintiff's counsel. Overall, the record suggests that Jurors Rivers or Mitchell did not so much conceal their prior accidents as fail to appreciate that disclosure was required.
The third prong of the Roberts three-prong test for determining if a juror's nondisclosure of information during voir dire warrants a new trial is that the juror's failure to disclose was not attributable to the complaining party's lack of diligence. The due-diligence test requires that counsel sufficiently inquire about information that potential jurors are being asked to disclose. Resolution of this issue requires a determination whether the explanations provided by the judge and counsel regarding *563 the kinds of responses which were sought would reasonably have been understood by the jurors to encompass the undisclosed information. The failure to make sufficient inquiries about the lawsuits or claims which the juror was being asked to disclose may constitute a lack of due diligence under the third prong of the test. See Tran v. Smith, 823 So.2d 210 (Fla. 5th DCA 2002). In this case, defense voir dire was very brief and did not mention the subject of prior accidents or injuries. For the reasons discussed above, it is a close question on this record whether defense counsel should have followed up with more questions or more targeted questions if, in fact, prior injuries in accidents was material to their jury selection strategy.
Finally, McCauslin argues that O'Conner's investigation into the jury misconduct was "tardy." The jury was selected by 2:30 p.m. and trial did not begin until the following morning. McCauslin argues that O'Conner should have investigated the potential jury members during that time frame and disclosed prior accident reports during the course of the trial, rather than wait for the trial's outcome.
In Tejada v. Roberts, 760 So.2d 960 (Fla. 3d DCA 2000), the Third District expressed the view that "the time to check the jurors' names against the clerk's lawsuit index is at the conclusion of jury selection." 760 So.2d at 966. As the Roberts court noted, the index of civil suits is readily available, and the search can easily be made by any staff person. The Third District said it was "unsound" to allow a party to undo a verdict at the end of a case based on information readily available at the inception of trial. Id. We think there is merit to this view and to the concerns that animated it. However, on review to the supreme court, the Roberts court rejected the Third District's approach, saying:
[W]e cannot and must not sacrifice the integrity of the jury process in the name of expediency. We must also recognize that conditions should not be imposed that would require additional teams of investigative lawyers to become involved as a necessary ancillary activity to the trial process.
814 So.2d at 345. See also Kelly v. Community Hospital, Inc., 818 So.2d 469, 474 fn. 8 (Fla.2002). Roberts is controlling on this point and McCauslin's argument is rejected.
There is no doubt that the questions to the venire at issue here asked for relevant information, but it is far less clear that the information not disclosed was material. The accidents were not serious, the injuries were not significant, treatment was minor and their occurrence was remote in time. Also, the record does not suggest deliberate concealment, and prudent probing by defense counsel in light of the way voir dire unfolded might well have resolved the problem entirely. Even more worrying is the twice-stated erroneous finding of the trial court that O'Conner utilized his peremptories to strike jurors who had been involved in prior accidents. Given the doubtful results of application of De La Rosa's three-prong test and the erroneous factual finding on which the trial court clearly relied, we cannot sustain the trial court's exercise of discretion to grant defendant a new trial. Accordingly, we reverse and remand for consideration of the matters rendered moot by the trial order.
REVERSED and REMANDED.
PERRY, B., Associate Judge, concurs.
PLEUS, J., dissents with opinion.
PLEUS, J., dissenting.
I dissent. Appellate review of an order granting a new trial because of juror concealment *564 of information is on an abuse of discretion standard. Vanderbilt Inn v. Pfenninger, 834 So.2d 202 (Fla. 2d DCA 2002). The majority opinion states that "from the cold record, we cannot glean the dynamics of this courtroom event...." In a "close call" case such as this, appellate courts should defer to the trial judge who was in the courtroom and observed the demeanor of jurors Rivers and Mitchell. "A trial court abuses its discretion `only where no reasonable man would take the view adopted by the trial court.'" See Sims v. State, 869 So.2d 45 (Fla. 5th DCA 2004), rev. granted, 926 So.2d 1270 (Fla. 2006). "As reasonable persons could differ with respect to the propriety of the actions of the trial judge, we conclude that there was no abuse of discretion...." See Joslin v. Joslin, 933 So.2d 106 (Fla. 5th DCA 2006).
I am not prepared to say that no reasonable circuit judge would make the same call as did Judge Berger. Accordingly, an affirmance is warranted.
NOTES
[1] In discussing the factors to be considered in the context of nondisclosure of a juror's exposure to the legal system, the Roberts court said:

Remoteness in time is one aspect to consider in determining the impact, if any, of a juror's prior exposure to the legal system on his present ability to serve in a particular case.... Other factors may include the character and extensiveness of the litigation experience, and the juror's posture in the litigation.
Roberts, 814 So.2d at 342.
[2] Similarly, at the beginning of the questioning, the trial judge asked the panel if anyone was ever a plaintiff or a defendant in a lawsuit, only one responded affirmatively. Yet later, several potential jurors disclosed prior lawsuits while responding to several questions posed by McCauslin.