OSTERHAUS, J. dissenting. I would reverse for a new trial beqause the foreman of the jury did not disclose his contempt for cigarette companies when asked directly during voir dire. When asked during voir dire, “What, if any, opinion do you have of cigarette companies, including [Defendants]?” the juror answered only: “[T]hey are a business.” What the juror didn’t reveal was his history of posting sharply negative' views about tobacco companies on social media. Online, he called them leeches and slaveholders who keep addicts in chains. Appellants only discovered the jury foreman’s strong views about them after the trial began. At which point, they immediately sought to remove him and empanel the juror alternate. But the trial court denied the motion, as well as Appellants’ subsequent motion for a new trial. Parties have a constitutional right to an impartial jury. Every prospective juror has a duty to fully and truthfully answer questions asked of them during voir dire. Veni-re members must not falsify any fact or conceal material information. Because here, the foreman of the jury concealed his negative opinions of cigarette companies when directly asked for his opinion of them during voir dire, I would reverse and remand for a new trial. . I. A. Our tradition of trial by jury “necessarily contemplates an impartial jury drawn from' á cross-section of the community.” State v. Silva, 259 So.2d 153, 160 (Fla. 1972). “[Ajnything less than an impartial jury is the functional equivalent of no jury at all,” City of Miami v. Cornett, 463 So.2d 399, 402 (Fla. 3d DCA 1985), dismissed, 469 So.2d 748 (Fla. 1985), and impinges a party’s due process rights. Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (“The Due Process Clause entitles a person, to an impartial and disinterested tribunal in both civil and criminal cases, ... safeguarding] the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.”). Courts and parties routinely vet prospective jurors with questions before the trial to “assure the right to a fair and impartial trial by qualified jurors.” McCauslin v. O’Conner, 985 So.2d 558, 560 (Fla. 5th DCA 2008); Fla. R. Civ. P. 1.431. This process is called “voir dire.” During voir dire, potential jurors have a “duty ... to make full and truthful answers ... neither falsely stating any fact, nor concealing any material matter.” Roberts ex rel. Roberts v. Tejada, 814 So.2d 334, 342 (Fla. 2002) (quoting Loftin v. Wilson, 67 So.2d 185, 192 (Fla. 1953)). “Trial counsel and their clients are entitled to assume that a prospective juror will truthfully answer the questions posed by the court or by the parties’ counsel,” McCauslin, 985 So.2d at 560. Concealment or failing to answer truthfully amounts to misconduct that can be extremely prejudicial to a party’s procedural rights. De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla. 1995) (quoting Loftin, 67 So.2d at 192 (“full knowledge of all material and relevant matters is essential to the fair and just exercise of the right to challenge either peremptorily or for cause.”)). A nondisclosure during a voir dire exam warrants a new trial under Florida law if: (1) the undisclosed information is “relevant and material to jury service in the case”; (2) the juror “concealed the information during questioning”; and (3) the juror’s failure to disclose the information isn’t “attributable to the complaining party’s lack of diligence.” De La Rosa, 659 So.2d at 241. The failure to grant a new trial under these circumstances is reversible error. See Kelly v. Cmty. Hosp. of Palm Beaches, Inc., 818 So.2d 469, 476 (Fla. 2002). B. Appellants moved to dismiss Juror Michael Taylor in this case after discovering, four days into a three-week trial in 2015, that he’d published social media comments in 2009 and 2014 .expressing contempt for cigarette companies. He posted: I quit smoking after 28 years.... All the time the government taxed the crap out of me to pay for dumb sh—I never agreed to. Their excuse to avoid making tobacco companies to stop. These companies arid the government are best buddies. They are both le[e]ches on the same people ... addicts like me. Why the h—do the uppity intellectuals think they are better than the guy at the bottom and thus tax his weakness? I think it is a sick way of easing their conscience too!! ⅝ * ⅜ Set yourself free from the people who have you addicted. Stop paying their fees just to feel normal. You do not have to quit alone. ... The only thing you are giving up is being a slave to some rich guy who sells tobacco products. Break the chains. (Emphasis added). Appellants argued to the trial court that Juror Taylor had concealed his posted contempt for them during voir dire despite being asked directly in a juror questionnaire. Every panel member was asked directly in a juror questionnaire for their opinion of cigarette companies. In addition, the Court admonished jurors during voir dire to “ ‘be honest’ and identify whether they had ‘bad feelings .., against [the companies]’ that would affect the ‘ability to be fair and impartial.’ ” Appellants claimed that they’d have stricken Juror Taylor for cause because of his hostility toward them, or exercise^ a .strike (they had left one preempto-ry strike on the table) had they known his true views. The trial court held a hearing on Appellants’ motion to remove Juror Taylor and denied it. The trial court found that Juror Taylor’s posts suggested bias against the tobacco parties. Arid no one disputed that his posts were both relevant and material to his jury service. But the trial court declined to 'dismiss Juror Taylor because it thought clear quéstions hadn’t been asked about his opinion of cigarette companies during voir dire; Appellants’ counsel hadn’t beén diligent about asking the right questions. After denying the motion, Juror Taylor became the foreman of the jury. The jury found Appellants liable. And the jury awarded an eight-figure verdict to the plaintiff. ... The .trial court later denied Appellants’ motion for a new-trial, which they based not only upon the previous nondisclosures, but new online material. Post-trial posts from- Juror Taylor’s Facebook account gloated about the verdict, urged that news be spread about it, and called tobacco companies “liable as Satan and deserving of] consequences for their actions.”[10] II. This appeal focuses on the last two prongs of De La Rosa’s three-prong test for determining when a juror .should be dismissed mid-trial for concealing information during voir dire. De La Rosa, 659 So.2d at 241. Appellants satisfied the first De La Rosa prong when the trial court recognized that Juror Taylor’s, pre-trial, social media posts showed material bias against tobacco companies relevant to his service on the jury. No one challenged that particular finding and the evidence supports it. The trial court denied Appellants’ motion to remove Juror Taylor based on De La Rosa’s second and third prongs. The trial court ruled that Juror Taylor did not conceal his opinions during voir dire. And it faulted Appellants for not diligently asking for Juror Taylor’s negative opinions of them. But these conclusions aren’t supported by the record. A juror “conceals” information where he fails to provide information “squarely asked for.” Birch ex rel. Birch v. Albert, 761 So.2d 355, 358 (Fla. 3d DCA 2000). Here, Question 32 of the juror questionnaire asked: “What, .if any, opinion do you have of cigarette, companies, including [Defendants]?” This question asked-“squarely” for Juror Taylor’s opinion of cigarette companies. But the trial court didn’t think so. It. found Question 32 ambiguous gnd “not specifically requir[ing] the jurors to disclose whether they harbor[ed] any negative feelings toward .tobacco companies”; needing “[m]ore specific follow-up questions ... for Juror Taylor to elaborate on his views regarding ... tobacco companies”; and as not reasonably “understood ... to encompass the scope and type of information that Juror Taylor provided in his sqcial media posts.” But this is sheer applesauce. “What is your opinion of _?” is a simple, straightforward question that is asked, understood, and answered by virtually everyone, everyday; as in:- “What is your opinion of/what do you think of [fill in the blank]-—your job; your teacher; your lunch; President Trump; Lady Gaga; Justin Bieber; iPhone 7; Windows- 10; Hollywood; Wall Street; the .Gators; the Hurricanes; the Seminóles; and so on. Even grade-schoolers understand this question, no problem, Everyone knows that it calls for a subjective personal response about the question’s subject, whatever that opinion might be; as in “I love my job,” “I hate the [Gators, Hurricanes, or Seminóles] .(you pick ’em),” or “School was ehh.”[11] This question is particularly effective and easy to answer for someone with strong opinions about a subject, like Juror Taylor. The disclosures of other venire members prove this very point. See Roberts, 814 So.2d at 346 (“The information disclosed by other prospective jurors may be as important in any particular inquiry by counsel, because the dynamics and context of the entire process may define the parameters of that which should be disclosed.”). They gave opinions of cigarette companies like: “all Evil”; “They are all predators”; “To say they are the lowest form of capitalism is an insult to capitalism”; “They are responsible for pushing the sales of a deadly product”; “Deserve what the[y] get”; “They should not be able to . produce such bad products that will cause harm to a human being”; “I believe they knowingly misled the public about effects of smoking that they knew were evident”; and “Big business that does not care the damage they do to those that are addicted to their product.” Appellants could effectively evaluate the fitness and prejudice of these prospective-jurors because of their truthful answers. Juror -Taylor possessed similarly strong negative opinions, but he concealed them. He didn’t answer Question 32 as due process demanded and his performance cannot credibly be blamed on the question. Juror Taylor had a responsibility to give his opinion of cigarette companies truthfully and fully, without “concealing any material matter.” Roberts, 814 So.2d at 342 (quoting Loftin v. Wilson, 67 So.2d 185, 192 (Fla. 1953)). See also Minnis v. Jackson, 330 So.2d 847, 848 (Fla. 3d DCA 1976) (“The well established rule is that the failure of a juror to honestly answer material questions propounded to him on voir dire constitutes bad faith requiring his disqualification from serving on the jury in the case.”). The trial court had instructed the venire to answer all questions “as truthfully and fully” as possible. It had also explained that it was “looking for” prospective jurors with ill feelings toward tobacco companies or other “preexisting” biases. At one point, the trial court also interrupted defense counsel between questions to individual members of the venire to make sure that prospective jurors knew exactly the sort of information they were required to' disclose. The trial court explained that the “whole idea is to find out if you have preexisting views ... in your background [that] would affect your ability to be fair and impartial.” For example, “if you [have] some real bad feelings that you’ve had for a long time against [cigarette] companies [that will always] be in the back of your mind.” Against this backdrop, Appellants were “entitled to assume” that Juror Taylor gave his “opinion ... of cigarette companies” fully and truthfully, just as he was asked. McCauslin, 985 So.2d at 560. But he didn’t. Tobacco companies weren’t just “a business” to Juror Taylor, as he answered at voir dire. His online readers knew, that he really thought of them as slaveholders and leeches, essentially as businesses that owned, consumed, and sucked the blood of other people for their own advantage.[12] His aspersion easily ranks among the worst opinions one can have of something. And courts have found juror concealment in much closer cases than this one. See, e.g., Nicholas v. State, 47 So.3d 297, 301 (Fla. 2d DCA 2010) (finding juror concealment where a juror knew two witnesses but didn’t respond when the court said, “If there’s something you think that we need to know about your background or your life experience, let us know so that we can ask that question”); Wilson v. State, 608 So.2d 842, 843 (Fla. 3d DCA 1992) (finding juror concealed material information by not responding to question “whether [she] could be impartial” when she had “ill feelings against the State Attorney’s Office”). Due process required Juror Taylor to reveal his contemptuous opinions of Appellants, so parties could assess his fitness for service as an impartial factfinder and protect the integrity of the trial. Whether Juror Taylor’s concealment was intentional or not, the process required him to give full and frank answers. Roberts, 814 So.2d at 343 (noting that “a juror’s nondisclosure need not be intentional to constitute concealment”). For these reasons, I cannot agree with my colleagues’ conclusion that Juror Taylor didn’t conceal anything. Second, I see no support for the trial court’s finding that Juror Taylor’s nondisclosure was Appellants’ fault, attributable to their lack of diligence. Appellants asked the right question. Question 32 asked for Juror Taylor’s “opinion ... of cigarette companies.” In responding, Juror Taylor had an obligation to disclose his material, negative opinion about cigarette companies. Again, the trial court is incorrect that Appellants’ questions needed to specifically ask for “negative feelings” about tobacco companies or ask “[m]ore specific followup questions.” Only a single clear question needed to be asked to require truthful and. complete responses from Juror Taylor and the 100+ other members of the venire in this case (Juror Taylor was panel member #99), not repeated questions or magic words. See Villalobos v. State, 143 So.3d 1042, 1047 n.6 (Fla. 3d DCA 2014) (due diligence doesn’t require further inquiry after a clear question is asked); Dery v. State, 68 So.3d 262, 255 (Fla. 2d DCA 2010) (finding no obligation to inquire further after a question is squarely asked). Question 32’s straightforward request for an “opinion, if any, of cigarette companies” was perfectly adequate to obtain Juror Taylor’s full and truthful opinion of cigarette companies (just as his fellow venire members disclosed). And so, I would reverse because the trial court’s conclusions regarding concealment and diligence aren’t supported by the record. Decisions based upon findings unsupported by competent, substantial evidence constitute an abuse of discretion. See, e.g., Russenberger v. Russenberger, 654 So.2d 207, 217 (Fla. 1st DCA 1995). Juror Taylor concealed his views of Appellants, casting reasonable doubt about his ability to be fair and impartial. He should have been dismissed and the alternate juror empaneled, even if the trial court considered the issue a close call. See Nicholas, 47 So.3d at 304 (“it is appropriate to remove a juror who has been less than candid during voir dire”); Bell v. Greissman, 902 So.2d 846, 847 (Fla. 4th DCA 2005) (close cases involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to impartiality). III. Because Appellants were denied a proper jury, I would quash the final judgment and remand for a new trial. . The posts specifically read: I have finally been released from jury duty. I was the foreman November 3 thru 26th. Tobacco trial, Awarded $18,6M to the plaintiff, (please share and inform others) .,. Tobacco companies have lied to the public- for over 60 years about how bad their products are.... For anyone who doesn’t understand how the tobacco companies can be held responsible, please reread the above facts.... Those who lead others to temptation are as liable as Satan and deserve consequences for their actions as well. . ‘‘Ehh’’ is slang and has been defined as “[t]he end all be all word used by teenage males when, speaking to their parents. Used as a response to questions which they do not wish to answer. Parent: how was school? Son: ehh Parent: did you have fun eating with your girlfriend after school? Son: ehh.” Http://www.urbandictionary.com/defíne.php? term=ehh (last visited Feb. 7, 2017). . See Meriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/ leech (last visited Feb. 7, 2017) (defining leeches as - carnivorous • or bloodsucking worms).