760 So.2d 960 (2000)
Francisco TEJADA, M.D., Francisco Tejada, M.D., F.A.C.P., P.A., and Francisco Tejada, M.D., F.A.C.P., P.A., d/b/a American Oncology Centers, Inc., Appellants,
v.
Lucille ROBERTS, personally and as personal representative of the Estate of Frederick Roberts, Deceased, Appellee.
No. 3D99-1432.
District Court of Appeal of Florida, Third District.
February 23, 2000.
Opinion Granting Clarification May 3, 2000.
*962 Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., and Shelley H. Leinicke, Fort Lauderdale, for appellants.
Gaebe, Murphy, Mullen & Antonelli and David Kleinberg, Coral Gables, for appellee.
Before JORGENSON, COPE and LEVY, JJ.
COPE, J.
After an adverse judgment in a medical malpractice case, plaintiff-appellee Lucille Roberts moved for a new trial on the ground that two jurors had failed to disclose prior litigation history. The trial court interpreted the case law as requiring a new trial when there has been a nondisclosure, even if there has been no showing of prejudice to the moving party. The court granted the new trial but invited the parties to seek clarification of the applicable legal standards in this court. We conclude that a new trial is not called for, and reverse the order under review.

I.
The plaintiff is the widow and personal representative of Frederick Roberts, who suffered from terminal liver cancer. Plaintiff alleged that defendants-appellants[1] were negligent in their treatment of the cancer, resulting in Mr. Roberts' death sooner than otherwise would have been the case.
During voir dire, the court and plaintiff's counsel asked the prospective jurors individually if they had been parties to any lawsuit. Jurors Paula C. Guerrero and Thelma Fornell answered no. Both served on the jury. The jury returned a defense verdict.
Thereafter plaintiff searched the index to the public records for Miami-Dade County, which appeared to show that in 1996 Ms. Guerrero had filed a domestic violence petition, and voluntarily dismissed it nine days later. The public record appeared to show that Ms. Fornell had been party to two civil lawsuits over twenty years ago, one as defendant in a small claims case filed in 1973 and the other as plaintiff in an auto negligence case filed in 1975. The trial court concluded that the case law required the ordering of a new trial, so long as it was shown that there was a nondisclosure of litigation history, and that the moving party need not show any prejudice from the nondisclosure. The court ordered a new trial, and defendants have appealed.

II.
It appears to this court that in the wake of De La Rosa v. Zequeira, 659 So.2d 239 (Fla.1995), and this court's subsequent cases, particularly Wilcox v. Dulcom, 690 So.2d 1365 (Fla. 3d DCA 1997), there is a widespread misimpression that a losing litigant can obtain an automatic new trial if he or she can show that one of the jurors failed to disclose prior litigation history, regardless of the circumstances. The practice appears to be developing that when there is a loss in a large case, be it by plaintiff or defendant, the losing litigant scours the public record to try to find evidence of a litigation nondisclosure. This court at present has three such cases pending, all of which involve substantial jury trials.[2]
We think the existing case law has been misinterpreted. When there is a post-trial claim of juror misconductnon-disclosure *963 of an important fact in voir direthe interest which is being vindicated is the moving party's right to a fair trial. See McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 555, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). A new trial is called for if there is evidence that the moving party "was not accorded a fair and impartial jury or that his substantial rights were prejudiced...." State v. Rodgers, 347 So.2d 610, 613 (Fla.1977); see also Lowrey v. State, 705 So.2d 1367, 1369-70 (Fla.1998). Unless the moving party has been adversely affected in a material way, however, the jury's verdict should not be disturbed. See Florida Power Corp. v. Smith, 202 So.2d 872, 878 (Fla. 2d DCA 1967).

III.
The beginning point for analysis is the Supreme Court's decision in De La Rosa, which states:
In determining whether a juror's nondisclosure of information during voir dire warrants a new trial, courts have generally utilized a three-part test.... First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence. We agree with this general framework for analysis....
659 So.2d at 241 (citation omitted). This is, as the court said, a "general framework for analysis," id., and judgment is called for in the application of the factors. We consider each of these elements in turn.
We start with the second element of the De La Rosa test, namely, "that the juror concealed the information during questioning." 659 So.2d at 241.[3] With regard to juror Guerrero, we do not believe that any concealment has been demonstrated. Juror Guerrero had filed a petition for a domestic violence injunction in 1996, which she voluntarily dismissed nine days later.
Florida courts agree that to show concealment, the moving party must demonstrate (among other things) that the voir dire question was straightforward and not reasonably susceptible to misinterpretation. See Coleman v. State, 718 So.2d 827, 830 (Fla. 4th DCA 1998); Blaylock v. State, 537 So.2d 1103, 1106 (Fla. 3d DCA 1988); Mitchell v. State, 458 So.2d 819, 821 (Fla. 1st DCA 1984).
When the subject of prior litigation was raised by the trial court in voir dire, the court said:
I'll ask you ... have you been a party to a lawsuit.
What I mean by that is, have you brought a court action against somebody else seeking money from them or if someone brought an action against you, seeking money from you. And it could be because of an auto accident, breach of contract, many other things, divorces and whatnot.
But let me know if you have been a party, a plaintiff or defendant, in a case yourself or maybe a close family member has been involved in a lawsuit. Let me know that as well.
(Emphasis added).
When plaintiffs counsel questioned the jurors, he said:

*964 He [the judge] asked you if you had ever been a party to a lawsuit. And again, the reason isn't to embarrass you, because you know when you were in the lawsuit, you may have won and you thought it was great or you lost, thought it stunk. Or you may have been a defendant and think all the plaintiffs are out to get their money or you may have been a plaintiff and thought otherwise.
It's really important what you bring to the stand on this issue. So I'm going to ask you, each one of you by name whether or not you have ever been a party to a lawsuit. And I mean, any kind of lawsuit, a divorce, a collection of a debt, a breach of contract, an assault and battery, an auto accident, a defective product, a medical negligence case, such as this case, a divorce, anything at all.
(Emphasis added).
The trial court and counsel framed the inquiry in terms of an action for damages. A petition for a domestic violence injunction is not an action for damages. We do not think that a reasonable juror would conclude that a petition for domestic violence amounts to a "lawsuit" for purposes of the voir dire questions that were asked. Indeed, it may not be clear to the average juror that a petition for domestic violence injunction is actually a civil, as opposed to criminal, matter. There was no concealment.
We also suggest that the court and counsel tread on thin ice when they assume that a juror knows exactly what a "lawsuit" is. Law students have drummed into them the fact that under the Rules of Civil Procedure, a civil action commences with the filing of a complaint. See Fla. R. Civ. P. 1.050. Thus, under a civil procedure definition, a demand letter or prelitigation settlement is not disclosable, but the filing of a lawsuit is.
Lay jurors are not law students and do not have the benefit of a course in civil procedure. Experience suggests that jurors do not have a clear understanding of when a lawsuit technically begins. We suspect jurors believe that a lawsuit occurs when the parties proceed to a jury trial in open court, and that all preliminary steps are not a "lawsuit." See Jay M. Zitter, Effect of juror's false or erroneous answer on voir dire regarding previous claims or actions against himself or his family, 66 A.L.R.4th 509 § 6 (1988). "Called as they are from all walks of life, many [jurors] may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." McDonough Power Equip., Inc. v. Greenwood, 464 U.S. at 555, 104 S.Ct. 845. We need not explore this point further as to Juror Guerrero (who voluntarily dismissed her petition without a trial) because in any event, the voir dire questions did not call for disclosure of a domestic violence petition.
We reach a different conclusion as to juror Fornell, who gave her occupation as "banker," evidently meaning bank officer. Since some bank officers through their work experience become quite familiar with the litigation process, plaintiff's showing was sufficient to call for an interview of juror Fornell on the issue of concealment.[4]See De La Rosa, 659 So.2d at 241 (three-part test is used for deciding whether to grant jury interview or new trial). No interview will be needed in this case, however, because as explained later in this opinion, other elements of the De La Rosa test are not satisfied.

IV.
We next address the requirement that "the complaining party must establish that the information is relevant and material to jury service in the case." Id. This is the part of the De La Rosa test which is *965 proving most troublesome, but we think the test is straightforward. The question is whether, if the correct information had been given by the juror, the movant would have had a ground for a challenge for cause, see McDonough Power Equip., Inc. v. Greenwood, 464 U.S. at 556, 104 S.Ct. 845, or the movant would have exercised a peremptory challenge. See James v. State, 751 So.2d 682 (Fla. 5th DCA 2000); Blaylock v. State, 537 So.2d at 1106.
In De La Rosa, the Florida Supreme Court cited Mitchell v. State, 458 So.2d 819 (Fla. 1st DCA 1984), and Mitchell puts it this way:
[R]elief will be afforded where (1) the question propounded is straightforward and not reasonably susceptible to misinterpretation; (2) the juror gives an untruthful answer; (3) the inquiry concerns material and relevant matter to which counsel may reasonably be expected to give substantial weight in the exercise of his peremptory challenges; (4) there were peremptory challenges remaining which counsel would have exercised at the time the question was asked; and (5) counsel represents that he would have peremptorily excused the juror had the juror truthfully responded.
Id. at 821 (footnote omitted).[5]
In De La Rosa the materiality test was clearly met. In that case the jury foreperson failed to disclose that he was a defendant in six prior lawsuits. 659 So.2d at 240 n. 1. He had been subject to a final judgment in garnishment only two months prior to jury selection, and had appeared at a deposition in aid of execution only six months before jury selection. Id. Plainly such a juror would be ill-disposed to rule for a plaintiff, and would likely have been stricken for cause. The facts were so clear-cut, and the nondisclosure so clear on its face, that the case was disposed of as a matter of law without a juror interview.[6]
Turning to Ms. Fornell, we conclude that the nondisclosures were immaterial. She was allegedly named in two lawsuits over twenty years prior to jury selection in this case. One was a 1973 small claims matter in which she was a defendant, and the other a 1975 automobile negligence case in which she was a plaintiff. Both were resolved without trial. The point of asking about litigation history is to determine if the juror bears some animus about the litigation process, or about similarly situated litigants, which would adversely impact on the prospective juror's ability to consider the case fairly. See De La Rosa, 659 So.2d at 241.
In this case the plaintiff has not given any particularized argument why Ms. Fornell's experience over twenty years ago as an auto negligence plaintiff, or small claims defendant, could plausibly form the basis for a challenge for cause or a peremptory challenge. At some point, past experience is simply too remote in time to have a material bearing on present jury selection. Whether Ms. Fornell's 1970's experiences in those cases were good, bad, or indifferent, twenty years is too far removed to be material under De La Rosa.[7]

*966 V.
The last consideration mentioned in De La Rosa is "that the failure to disclose the information was not attributable to the complaining party's lack of diligence." 659 So.2d at 241. Although not raised by the appellant, we conclude that the diligence requirement was not satisfied in this case.
The motion for new trial in this case is, at bottom, based on a review of the civil lawsuit index maintained by the clerk of the circuit and county court. It is a public record which was freely available before, during, and after this trial.
This court's concern is that the checking of the clerk's lawsuit index was not done until after the trial was over, when it could have been done sooner. This court has become aware that in at least two circuit courtrooms, the trial judge at the conclusion of jury selection will grant a recess if either of the parties wishes to check the litigation index before the trial proceeds. If it appears that any of the juror's names has turned up, then an inquiry can be conducted on the spot and the juror can be excused if need be. Plaintiff's counsel candidly disclosed that he had followed such a procedure in a recent trial in Key West. In our view, that is the better solution to the problem.
We therefore hold that the time to check the jurors' names against the clerk's lawsuit index is at the conclusion of jury selection. If a party does not request the opportunity to make the record search, then that litigant will not be heard to complain later about nondisclosure of information which could have been disclosed by reference to the clerk's index.[8]

VI.
For the reasons stated, we reverse the order granting new trial and remand with directions to reinstate the jury verdict.
Reversed and remanded.

On Motion for Rehearing, Clarification and Certification
COPE, J.
We deny rehearing and certification but grant clarification.
Plaintiff argues that it is impractical to request a brief recess at the conclusion of jury selection in order to check the jurors' names against the litigation index. Plaintiff explains that after this case was lost, plaintiff used a computer tracking system, Autotrack, to conduct computer research regarding the jurors and their past places of residence, and only upon conclusion of that research was the clerk's lawsuit index consulted. Plaintiff argues that in order to conduct this type of research, it will be necessary for the litigant to request a two-week recess at the close of jury selection and that this court's opinion is mandating a procedure which is totally impractical.
Respectfully, we have done no such thing. While it is true that the plaintiff commissioned Autotrack computer studies, see R. 641-719, those reports are not important in this case. The pivotal documents are instead two pages from the clerk's civil lawsuit index in which the names Paula Guerrero and Thelma Fornell appear. See R. 627 and 631. This alphabetical index is a public record, which could have been consulted at any time. Had the index been reviewed during jury selection, counsel could have questioned jurors Guerrero and Fornell about those entries.
Our point is that in this case a quick trip to the clerk's office would have revealed the possibility of an undisclosed litigation history, and the matter could have been cleared up by questioning the jurors immediately. It is unsound to allow parties to overturn a trial which has lasted days, weeks, or even months, on the basis of *967 information which readily could have been obtained from the clerk's record in the very same courthouse where the case is being tried.
Plaintiff poses a hypothetical question about litigation history which is contained in the records of some foreign jurisdiction, and is not ascertainable in the clerk's record where the case is being tried. We express no opinion on such a case, because that is not the situation now before us. Here, the relevant records were readily available.
Plaintiff argues that consultation of the clerk's lawsuit index is not always as simple as it might seem. Counsel states that in his Key West experience, which we have alluded to in our opinion, certain follow-up inquiries were necessary after the trial had already begun and that, based on information which came to light, the trial court struck one of the jurors and seated an alternate. Although the record of counsel's Key West experience is not now before us, we accept his description of events. If difficulties arise in obtaining access to the clerk's record, then that is a matter which should be addressed to the trial court in the first instance, and the resolution lies within the court's discretion. We do not say that civil trials must be held up for lengthy periods in jury selection, but we do say that the time to consult readily available public records is before, not after, the fact.
We have carefully considered the other contentions in the motion for rehearing, clarification, and certification, but are not persuaded thereby.
Clarification granted; rehearing and certification denied.
NOTES
[1] Francisco Tejada, M.D., Francisco Tejada, M.D., F.A.C.P., P.A., and Francisco Tejada, M.D., F.A.C.P., P.A., d/b/a American Oncology Centers, Inc.
[2] The other pending cases are Leavitt v. Krogen, No. 98-3233, and Birch v. Albert, No. 98-416.
[3] As a threshold matter, the plaintiff's investigation showed that there was more than one "Thelma Fornell" and more than one "Paula Guerrero" in the index to civil cases. Where there is any doubt about whether the person identified in the litigation index is the same person that served on the jury, then a juror interview should be conducted before a new trial is ordered. The court in this case concluded that the documents brought forward by the plaintiff sufficiently established identity. Defendants did not press this point below, so we assume for present purposes that the two jurors have been correctly matched to the prior litigation.
[4] The question is whether in light of her work experience juror Fornell should have understood the voir dire questions to extend to lawsuits that do not proceed to trial. Juror Fornell's two prior cases were resolved prior to trial.
[5] Whether to believe the representation that counsel would have exercised a peremptory challenge is for the court. Cf. Melbourne v. State, 679 So.2d 759, 764 (Fla.1996) (whether stated reason for peremptory challenge is pretext is for the court).
[6] Whether a jury interview is necessary in a particular case depends on the circumstances. The De La Rosa court noted that where the three-part test was met, "our appellate courts have reversed for jury interviews or new trials, where jurors allegedly failed to disclose a prior litigation history or whether other information relevant to jury service was not disclosed." 659 So.2d at 241 (citations omitted; emphasis added). In other words, if the motion for new trial can be disposed of as a matter of law without a jury interview, the trial court is free to do so. However, if a juror interview is necessary in order to obtain the facts necessary to make an informed decision, then there should be an interview.
[7] Because there was no concealment by juror Guerrero, we need not reach the issue of materiality in her case.
[8] The court would suggest that the chief judges of the Eleventh and Sixteenth Judicial Circuits look into this problem and determine if this information may feasibly be made available at an earlier stage, such as on line in the courtroom or attached to juror questionnaires, if the litigants request it.