816 So.2d 671 (2002)
Steven Gerald DAVIS, Sunshine Industries of Coral Springs, Inc., a Florida Corporation, DSI Transports, Inc. a Texas Corporation, and Nieves Gomez, Appellants,
v.
Ulysses COHEN and Cebrena Poitier, as co-personal representatives of the Estate of Arletha Cogdell Walton, and Colin Walton, Jr., as personal representative of the Estate of Colin Walton, Sr., Appellees.
No. 3D99-3128.
District Court of Appeal of Florida, Third District.
March 20, 2002.
Rehearing Denied June 5, 2002.
Hightower & Rudd; Richard A. Sherman and Rosemary B. Wilder; Barnett & Barnard, Fort Lauderdale; Fowler, White, Gillen, Boggs, Villareal & Banker and Bonita Kneeland Brown, for appellants.
Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, and Joel Perwin, Miami; Gary, Williams, Parenti, Finney, Lewis, McManus, Watson, Sperando; Caruso, Burlington, Bohn and Compiani, and Russell S. Bohn, West Palm Beach, for appellees.
Before LEVY, FLETCHER and SORONDO, JJ.
SORONDO, J.
Defendants appeal judgments entered after a jury trial in a wrongful death action arising from a motor vehicle accident.
What began as a complex appeal involving several difficult issues, has become a single issue appeal decided by the Florida Supreme Court's recent decision in Roberts v. Tejada, 814 So.2d 334 (Fla.2002).[1]
Voir dire examination in this case began with the following comments by the trial judge:
It is not unusual for people to have strong feelings about certain subjects or to identify with or feel some partiality towards one side or the other, however, it would be a violation of your oath as prospective jurors to fail to answer truthfully and as completely as possible our questions about such matters.
* * *
Any failure to answer truthfully and completely may require this case to end in a mistrial or to be tried again.
*672 Thereafter, the judge divided the panel into two groups. He placed fifteen prospective jurors in the jury box and left the balance in the courtroom's gallery. The judge then instructed counsel to direct their questions to the fifteen in the jury box. The prospective juror who is the center of this appeal is Mr. Coats. He was sitting in the gallery when voir dire examination began.
The first attorney to address the jury asked the following question:
Have any of you ever been a party to a lawsuit or a claim, whether it's a car accident or a landlord tenant dispute or a contract dispute, any kind of a lawsuit or a claim?
* * *
No claims, no lawsuits either for you or against you? That's why I kind of pushed, because somebody always thinks of something and about ten seconds laterand by the way, if in five minutes you think of something that I asked five minutes ago that you suddenly remember, please put your hand up and don't let it slide, okay, all right?
Counsel subsequently questioned several prospective jurors who responded affirmatively to his question about their prior litigation experience.[2] Extensive questioning of these jurors followed. In response to these questions, the jurors described their own litigation experience as well as that of certain close relatives.
Some time later, defense counsel questioned the jury as follows:
There have been some questions asked about lawsuits. But I have a real specific question I want to ask about. The first place, is [sic] anybody presently have or presently involved in a lawsuit where youyou're either suing someone or being sued by someone? In other words, presently meaning the lawsuit is still going on right now, and if so, please tell us now.
Anybody? Nobody answers, okay.
The second question, which is pretty much like the first one, but it deals with lawsuits in the past, I'm going to ask you as a group, but it's to each one of you separately, were you ever, at any time in your life, a plaintiff or a defendant in any lawsuit whatsoever? That is, did you ever sue anyone or were you ever sued by anyone? And this is only those lawsuits you haven't told us about already, okay, and if you have been a plaintiff or a defendant in a lawsuit in the past, please tell us all now.
Nobody?
* * *
Anyone else that didn't tell us already where you had a lawsuit in the past where you sued somebody or you got sued, any one, for any reason whatsoever? Nobody?
Anybody have a pending claim against anyone else for personal injury or your car being damaged or for your roof being blown off, anything? Right now I'm going on right now. Anybody?
A lot of silence out there.
Other than the folks who've already told us, has anyone of you, anyone of the fifteen folks here have a family member that passed away because of an accident?
*673 Although all of these questions were addressed to the fifteen prospective jurors sitting in the jury box, the questions were audible to Mr. Coats and the others who were sitting in the gallery.
When Mr. Coats's group was moved into the jury box, the trial judge stated:
Well, you've been listening, so hopefully this go around won't take as long as the first go around, and, [counsel], it's all yours.
As pertinent to our analysis, plaintiffs counsel asked:
How about any of the new jurors, ever file a claim or have a claim made against them, file a lawsuit, have a lawsuit filed against them? All right.
Mr. Coats was one of the prospective jurors who raised his hand.[3] Under questioning by one of the defense attorneys, the following exchange took place:
[Counsel]: I have in my notes that you may have either brought a claim or had a claim brought against you at some point in time.
Mr. Coats: Yeah, uh-huh.
[Counsel]: Can you tell me a little bit about that ...
Mr. Coats: Anyway, what happened is as a young fellow I was determinedI was hot-headed like everybody else, I went out, got a good job and I bought a nice car and went out with that car after drinking and so on and so forth and I was not paying attention to what I was doing and I ran into the back of a friend of mine, who, in turn, sued me, and I paid the price for it.
Mr. Coats did not reveal any other experiences with the court system.
During the actual process of selecting the jury, the defense moved to remove him for cause. When the motion was denied, the defense tried to exercise a peremptory challenge, which was also disallowed by a successful Melbourne[4] objection. Mr. Coats served on the jury and was ultimately selected as foreperson by his fellow jurors.
After a nine-day trial, the jury returned a verdict for plaintiffs and awarded significant monetary damages. Thereafter, defendants filed Motions for New Trial raising various errors and, as has now become customary for the losing party in almost every case, Motions to Interview Jurors. All motions were denied.
A post-verdict investigation by the defense revealed that Mr. Coats had not been totally forthcoming when revealing his history of litigation. In fact, he had failed to identify a personal injury civil suit he filed against Metropolitan Dade County in 1991.[5]/[6] More disturbing is the fact that he was represented in that case by the firm of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson and Sperando (the Gary firm); the very firm representing plaintiff Colin Walton, Sr. in the present case. Even more disturbing is the fact that the defendant, who Mr. Coats sued in his 1991 lawsuit, was represented by the *674 attorney representing defendant Steven Davis in this case. This attorney had taken Mr. Coats's deposition in the 1991 lawsuit.
Defendants argue that Mr. Coats's failure to reveal the existence of the personal injury lawsuit, his failure to reveal the fact that he hired the Gary firm to represent him, and his additional failure to acknowledge that he knew the attorney for Steven Davis require reversal.[7]
In De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995), the Florida Supreme Court stated that:
In determining whether a juror's nondisclosure of information during voir dire warrants a new trial, courts have generally utilized a three-part test. First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence.
(Citations omitted). Addressing each part of the test in turn, we conclude that the information Mr. Coats suppressed was relevant and material to jury service in the case. This case involved a terrible automobile accident that resulted in the deaths of two people. Mr. Coats admitted having a prior experience as a defendant in an automobile accident but did not reveal a far more recent experience as a plaintiff in the same type of case. This is exactly the type of information that is essential in making a decision on who to keep and who to remove from a jury. Perhaps more significantly, in this case the defense tried to remove Mr. Coats from the jury. Their effort to do so failed in the face of a Melbourne challenge. Had Mr. Coats revealed that he had been a plaintiff in a similar case, the trial judge may well have ruled differently and allowed the peremptory challenge.[8]
As concerns the second prong of De La Rosa, whether he did so intentionally or inadvertently, Mr. Coats definitely suppressed the existence of his prior litigation as a plaintiff in an automobile accident. It is not as clear that he was aware that the Gary firm was representing one of the plaintiffs in the present case. When the attorneys initially introduced themselves to the panel, the attorney from the Gary firm identified himself but did not identify his firm. Accordingly, it is impossible to tell whether Mr. Coats actually knew during voir dire examination that the Gary firm was involved in this case. Defendants argue that during the course of the trial one of the witnesses mentioned the Gary firm's involvement in the case. Even so, we cannot speculate as to whether this particular juror heard that single reference at an isolated moment during the course of this nine-day trial.
*675 Defendants also argue that Mr. Coats should have recognized the attorney for defendant Steven Davis, who had taken his deposition in the 1991 case on behalf of the party he was suing. As disturbing as this appears, we cannot speculate about whether Mr. Coats recognized the attorney in question, having met him only during a deposition taken several years earlier. We note that the attorney obviously did not remember Mr. Coats, or he most certainly would have brought it to the attention of the trial judge when the defense tried to strike Mr. Coats from the jury.[9]
The last part of the De La Rosa test requires us to determine whether the failure to disclose was attributable to the complaining party's lack of diligence. In response to the proliferating practice of launching post-verdict investigations into the accuracy of juror responses in the area of prior litigation, in Tejada v. Roberts, 760 So.2d 960, 966 (Fla. 3d DCA 2000), this Court interpreted this diligence requirement as follows:
We ... hold that the time to check the jurors' names against the clerk's lawsuit index is at the conclusion of jury selection. If a party does not request the opportunity to make the record search, then that litigant will not be heard to complain later about nondisclosure of information which could have been disclosed by reference to the clerk's index.
This Court's decision in Tejada, would have precluded appellate review of the juror non-disclosure issue in the present case, as the examination of the lawsuit index was not conducted until after the verdict was received. However, the Florida Supreme Court reversed this decision in Roberts v. Tejada, 814 So.2d 334 (Fla. 2002), and decided that the due diligence prong of De La Rosa does not require the search of the lawsuit index prior to the conclusion of jury selection as required by this Court. This being the case, we conclude that the numerous questions asked by both plaintiffs' and defendants' attorneys during voir dire examination concerning the prospective jurors' prior litigation experience, including the very specific questions asked of Mr. Coats, were sufficient to satisfy this last step of the De La Rosa test.
We therefore reverse the final judgment of the trial court and remand for a new trial.
NOTES
[1] We do not address or comment on any other issue raised in this appeal.
[2] Jurors Lasseter (automobile accident), McKinnon (automobile accident), Perez (one case involved the juror's business and four automobile accidents), Granados (automobile accident), Prada (automobile accident-herself and her father), Whelpley (business lawsuits concerning lien holders and subcontractors and a personal lawsuit involving the ownership of a horse), and Zanakis (brother killed in automobile accident).
[3] In this second group of prospective jurors several answered affirmatively to this question: Jurors Solte (automobile accident), Aycart (father was killed in automobile accident), Delgado (close friends involved in automobile accidents), Campbell and Jones (although both these jurors raised their hand in response to this question, the record does not reflect that the attorneys questioned them any further on this point).
[4] Melbourne v. State, 679 So.2d 759 (Fla. 1996).
[5] The present case was tried in June of 1999.
[6] The lawsuit was styled Bernard Coats and Sylvia Coats, his wife, v. Julie Jimenez, case no. 92-20083. It was filed in Miami Dade County and alleged negligence in an automobile accident.
[7] Defendants' post-verdict investigation also revealed that Mr. Coats had been involved in a divorce action. Although, Mr. Coats did not relate the existence of the divorce proceeding within the context of the prior litigation question, he did acknowledge during voir dire that he was divorced. This information placed all counsel on notice that Mr. Coats had been involved in litigation in the family court. We therefore find no failure to disclose as concerns the divorce action.
[8] We recognize that the Florida Supreme Court stated in Roberts v. Tejada, at 345 (Fla. 2002), that a determination of the materiality of a prospective juror's non-disclosure "should primarily be made at the trial level." The court also acknowledged, however, that "[t]here may ... be instances where such determination may be made as a matter of law based upon the particular circumstances." Id. We believe this to be such a case.
[9] Defendants suggest that it would have been easier for Mr. Coats to remember the attorney in question than it would have been for the attorney to remember Mr. Coats. They argue that Mr. Coats did or should have remembered that attorney and reported the situation to the trial judge. Again, we are not inclined to speculate as to what was in this juror's mind.