818 So.2d 469 (2002)
Thomas J. KELLY, etc., Petitioner,
v.
COMMUNITY HOSPITAL OF the PALM BEACHES, INC., etc., et al., Respondents.
No. SC00-1255.
Supreme Court of Florida.
May 16, 2002.
*470 Adam Lawrence of Lawrence & Daniels, Miami, FL; and Law Offices of R. Stuart Huff, Coral Gables, FL, for Petitioners.
Debra Potter Klauber and Kenneth E. White of Haliczer, Pettis & White, Fort Lauderdale, FL; and Peter M. Feaman and Jeffrey T. Royer of Buckingham, Doolittle & Burroughs, Boca Raton, FL, for Respondents.
LEWIS, J.
We have for review Kelly v. Community Hospital of the Palm Beaches, Inc., 756 So.2d 144 (Fla. 3d DCA 2000), which is a per curiam decision citing Tejada v. Roberts, 760 So.2d 960 (Fla. 3d DCA 2000), quashed, 814 So.2d 334 (2002), which was then pending review in this Court. We granted jurisdiction based on Jollie v. State, 405 So.2d 418, 420 (Fla.1981).[1]

MATERIAL FACTS
Appellants, Thomas J. Kelly, M.D. and Thomas J. Kelly, M.D., P.A. (collectively, "Kelly") filed an action against Community Hospital of the Palm Beaches, Inc. and Humana, Inc. (collectively, "Humana") based upon allegations of fraud in the inducement to locate his adolescent psychiatric program at the hospital. Kelly claimed that, after false promises were made to him to entice the move, his program was terminated, several months after an initial one-year contract had expired. The jury returned a verdict in favor of the respondents, and judgment was entered on the verdict.
Thereafter, Kelly's counsel discovered that certain jurors had grievously failed to provide honest responses during voir dire questioning. A motion for new trial brought these serious matters to the attention of the trial court. Appellant's allegations concerned foreman Truman Skinner and jurors Karen Tarkoff and Robert Dawson. The foreman, Truman Skinner, was a former lawyer who had been suspended by this Court.[2] He had *471 also apparently engaged in conduct which resulted in his ultimate disbarment by the United States Supreme Court.[3] However, during the course of voir dire, he failed to reveal andrepresenting, instead, that he had "retired"affirmatively concealed the facts of his suspension and disbarment. As the voir dire process began, the trial judge instructed the prospective jurors to tell the court and counsel about themselves and to include facts concerning occupation. When Skinner was questioned individually by the judge during voir dire, the following colloquy ensued:
COURT: Truman Arnold Skinner. And I didn't recognize you at first. How are you?
SKINNER: Good to see you.
COURT: Good to see you.
SKINNER: ... I am age 61.
. . . .
SKINNER: I practiced law in Miami for 31 years and am now retired.
COURT: Oh, how nice. I didn't know that you had retired. When did you do that?
SKINNER: About two years ago.
COURT: You're either doing a lot of fishing or golf or what have you. Too young to retire though.
Skinner did not respond, or disclose his suspension by this Court or his disbarment by the United States Supreme Court.
Skinner also failed to reveal the nature of his prior criminal charges and lawsuits. During the defendants' voir dire, the following occurred:
COUNSEL: This is a contract case, and I didn't ask you, has anybody ever been involved in a lawsuit involving breach of a contract in any way? Raise your hand. Anybody?....
. . . .
SKINNER: There were allegations with oral modifications in one of them.
COUNSEL: Is that the one where you were the plaintiff or the defendant?
SKINNER: Defendant.
Defense counsel subsequently asked the panel:
Now, I asked you if you had been involved in any contract actions. Let me ask you this, has anybody been involved in a lawsuit, other than those, of course, that I already asked? Just a lawsuit of any kind, ever been involved before, personally?
Another prospective jurorattorney named Minsker volunteered that he had been involved in various lawsuits including a partnership dispute, landlord-tenant disputes, and "commercial business matters." Different panel members disclosed other lawsuits. Skinner added nothing to the limited matters he had previously disclosed, and did not reveal over forty-eight other legal actions in which he was an actual party. Kelly's attorney questioned the prospective jurors further, and accepted Skinner as a juror based on the foregoing questions and responses.
Post-verdict investigation revealed that between 1980 and 1996, Skinner had been a party in over fifty legal proceedings.[4] It *472 is also important to note that several of the cases involved allegations of fraud.[5] Skinner had also been a defendant in both civil and criminal proceedings in federal court.[6]
In one of the cases, Lake Worth Hosp. Corp. v. Skinner, No. 93-23973 (Fla. 11th Cir. Ct. complaint filed Dec. 22, 1993), Skinner had been accused of wrongfully asserting control over the assets of his client, Lake Worth Hospital. Skinner apparently had this specific case in mind during his voir dire. When defense counsel asked the panel collectively whether anyone had faced a "personal experience" which biased them against hospitals, without ever disclosing the legal action, Skinner stated:
SKINNER: Let me ask you this, because I think it could be important. Is Community Hospital of the Palm Beaches located in Lake Worth?
COUNSEL: It's located in Riviera, on 46th Street.
SKINNER: Not on 10th, in Lake Worth.
COUNSEL: No, that's Lake Hospital.
SKINNER: It used to have a corporate name of Community Hospital or something like that.
However, Skinner never disclosed his Lake Worth Hospital action, and it was concealed from the parties and the court.
In addition to the allegations concerning Skinner, Kelly alleged that juror Tarkoff also failed to disclose certain information. The day after Skinner had been questioned during voir dire, a new group of potential jurors submitted to the voir dire process to supplement the panel which had lost several jurors for hardship reasons. One of the supplemental panel members, Karen Tarkoff, in response to plaintiffs' counsel's question to the panel about prior lawsuits, stated only that she had been sued on a contract by a swimming pool contractor. Shortly thereafter, in response to counsel's question about prior lawsuits, another juror asked, "Does divorce count?" Counsel replied, "It does, unfortunately." Several jurors then proceeded to disclose their divorce cases.
Kelly's counsel asked the panel members to reveal anything in their private lives that might affect their fairness as jurors. Defense counsel asked the panel, collectively, whether they had any feelings regarding "fraud" actions "which might predispose [them] to one side or the other?" Tarkoff remained silent, and failed to disclose any other legal matters.
*473 Notwithstanding such silence, post-trial investigation disclosed that Tarkoff was the petitioner in a recently filed divorce action. In her 1996 verified complaint in that action, Tarkoff swore that her husband "earns a substantial income as a successful criminal defense attorney"; that "[a] significant portion of [that] income is undeclared"; and that as a result of her husband's "substantial income," she and her husband "enjoy a life of luxury." It was also revealed that Mr. Tarkoff had been indicted in federal court for participating in a conspiracy to commit Medicare fraud and launder the proceeds between 1994 and 1997. While the indictment is undated, the last overt act alleged in the indictment occurred on June 16, 1997. The trial in Kelly began on August 18, 1997.
This record also reveals that the judge instructed the jurors that they "should not form or express any opinion about the case until you are retired to the jury room to consider your verdict," and that, "[d]uring [trial] recesses, you shall not discuss the case amongst yourselves or with anyone else. Nor permit anyone to say anything to you or in your presence about [the] case." In his motion for new trial, Kelly presented evidence that jurors Dawson,[7] Skinner, and Tarkoff (the latter two having also concealed their legal involvements) failed to follow the judge's instructions.
Specifically, in a sworn amendment to Kelly's motion for new trial and to interview jurors, Kelly's attorney stated that he was provided certain information by alternate juror Herrero. Herrero informed him that jurors Skinner, Tarkoff, and Dawson had decided the case in favor of Humana from the outset, and had repeatedly violated the trial court's directives by discussing the case among themselves and attempting to persuade other jurors to adopt pro-defense positions throughout the trial. Herrero said that Dawson had "expressed his dislike for Kelly because he had made a lot of money, but was suing for more." As a result of this "repeated trial misconduct," jurors Hall, Herrero, and Castro had "distanced themselves" from Skinner, Tarkoff, and Dawson "during recesses to avoid being in violation of the Court's orders."
At the hearing on Kelly's motions for new trial and to interview jurors, Kelly's counsel elaborated on the details which Herrero had given him. Herrero reported that, by the second day of jury selection, Skinner "was already discussing the case... and that his bent was always either mocking or being cynical about or being critical of the plaintiffs' side of the case." Skinner was "always ... trying to find a way to put down and change what the plaintiff's evidence had been." Hall and Herrero repeatedly had to tell Skinner and Tarkoff, who was also "involved in that from the beginning" and who, like Skinner, was "completely pro Humana and anti [plaintiff]," to follow the judge's orders and not make up their minds. Tarkoff nevertheless "tried very hard to work on Castro to get her to ... the pro defense point of view," even inviting her to her house to talk about the case.
Kelly moved for a formal jury interview or a new trial due to this alleged juror misconduct. Humana opposed the motions, and the trial court denied them. Kelly appealed to the Third District Court of Appeal, raising alleged juror misconduct and other evidentiary and jury instruction *474 issues. Humana cross-appealed on the issues of punitive damages and the economic loss rule.
In a per curiam decision with only citations, the appellate court affirmed. See 756 So.2d at 145. Kelly sought rehearing, rehearing en banc, and certification to this Court as passing on a question of great public importance. The Third District denied the motions, and this timely petition for review followed, predicated upon the citation to Tejada v. Roberts, 760 So.2d 960 (Fla. 3d DCA 2000), which was accepted for review by this Court.

ANALYSIS
In De La Rosa v. Zequeira, 659 So.2d 239 (Fla.1995), this Court established the three-prong test applicable to cases of alleged juror nondisclosure. There, the Court held:
In determining whether a juror's nondisclosure of information during voir dire warrants a new trial, courts have generally utilized a three-part test. First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence.
Id. at 241 (citations omitted). Here, the trial court improperly applied this test.
Pursuant to De La Rosa's first prong, the complaining party must establish not only that the nondisclosed matter was "relevant" as all prior litigation history is but also that it is "material to jury service in the case." Id. In De La Rosa (in which the jury had rendered a verdict in favor of the defendant), the Court found the challenged juror's extensive prior litigation historypredominantly as a defendantto be material, acknowledging similarities with Bernal v. Lipp, 580 So.2d 315 (Fla. 3d DCA 1991):
Here, as in Bernal [v. Lipp, 580 So.2d 315 (Fla. 3d DCA 1991)], the juror's involvement in six prior lawsuits as both defendant and plaintiff is material. He was a defendant in five prior lawsuits brought by creditors; his involvement may well have affected his point of view in this action. Moreover, in view of the juror's involvement in so many lawsuits, it is difficult to believe he simply did not think the questions posed by counsel applied to him. Bernal should not be viewed as distinguishable from this case on the ground that this juror's involvement was not in a personal injury action: A person involved in prior litigation may sympathize with similarly situated litigants or develop a bias against legal proceedings in general. In these circumstances, counsel must be permitted to make an informed judgment as to the prospective juror's impartiality and suitability for jury service.
659 So.2d at 241 (quoting with approval Zequeira v. De La Rosa, 627 So.2d 531, 533 (Fla. 3d DCA 1993) (Baskin, J., dissenting)).
Applying De La Rosa, the egregious nondisclosures and concealments here by Tarkoffand, most particularly, by Skinnerrender the Third District's affirmance in this case without support, and its reliance on Tejada a rejection of this Court's De La Rosa decision.[8] To be *475 material, a prospective juror's litigation history need not necessarily involve an action similar to the one in which he or she may be required to serve. See generally Tejada, 814 So.2d at 337-38. Here, however, juror Skinner had been involved as a defendant in a number of cases involving allegations of fraud, and juror Tarkoff was the petitioner in a recently-filed divorce action in which she alleged (in a verified complaint) that her husband earned "a substantial income as a successful criminal defense attorney," that "[a] significant portion of [that] income is undeclared," and that, as a result of her husband's "substantial income," she and her husband enjoyed "a life of luxury." In the context of this action alleging fraud, these nondisclosures were clearly material.
The second prong of De La Rosa's testthat the juror concealed the information during questioningwas also indisputably satisfied. Skinner did not disclose his suspension by this Court or his disbarment by the United States Supreme Court, and only revealed the tip of an iceberg of litigation history, which included allegations of fraud directed against him. Tarkoff did not disclose divorce proceedings in which she had revealed that she lived lavishly by virtue of her husband's substantial income, a "significant portion" of which was "undeclared."
Lastly, De La Rosa's third prong that the failure to disclose the information was not attributable to the complaining party's lack of diligencewas likewise clearly met. The "due diligence" test requires that counsel provide a sufficient explanation of the type of information which potential jurors are being asked to disclose. Here, counsel clearly indicated that each potential juror was being asked to disclose his or her litigation history. Skinnerwho misrepresented that he was a "retired" lawyerby virtue of his training and experience, unquestionably understood that counsel, in asking the venire whether "anybody [had] been involved in... a lawsuit of any kind," sought the extensive and highly pertinent litigation information which he failed to disclose. Further, with respect to juror Tarkoff, the record reflects that information regarding involvement in divorce proceedings was unequivocally requested. In response to counsel's question about prior lawsuits, one juror specifically asked, "Does divorce count?" After counsel replied, "It does, unfortunately," several jurors disclosed their divorce cases, but Tarkoff remained silent. Thus, the information which Tarkoff withheld was, similarly, squarely sought.
In De La Rosa, 659 So.2d at 242, this Court approved and adopted Judge Baskin's dissenting opinion in De La Rosa, 627 So.2d at 533-34, which addressed concealment, quoting from it in the Court's opinion:
Assuming, arguendo, that the juror had no intention of misleading counsel, "the omission nonetheless prevented counsel from making an informed judgment-which would in all likelihood have resulted in a peremptory challenge." Bernal, 580 So.2d at 316-17. The majority's holding that a juror's failure to answer counsel's question does not constitute concealment precludes collective questioning of jurors and will compel attorneys to obtain individual oral or written responses in order to fulfill the concealment prong of the Bernal test. *476 659 So.2d at 242 (quoting De La Rosa, 627 So.2d at 533-34 (Baskin, J., dissenting)). Here, toomost particularly in Skinner's casethe omissions "would in all likelihood have resulted in a peremptory challenge." As we observed in Tejada, "[t]he issue under these circumstances is not whether there may be evidence to support what a jury has done but, on the contrary, whether a proper jury was ever impaneled." 814 So.2d at 346. Here, the record clearly reflects that it was not. It is difficult to even envision a more egregious concealment and active misrepresentation than occurred here.
The appellate court below relied upon Tejada, through whichcontrary to the holding of this Court in De La Rosathe Third District required counsel to discover adverse information during trial. However, regardless of the impact which this Court's subsequent disposition of Tejada may have had on the decision below, applying the De La Rosa test to the record in this case, the result below cannot be approved. We cannot accept the dissenting view that the parties must waste time and effort to go through the unnecessary process of additional trial-level hearings in light of the fact that, here, all three prongs of De La Rosa have so plainly been met. Not only did Skinner say nothing about his relevant and material litigation history, he even maintained his silence after having first blatantly questioned counsel to secretly ascertain whether the defendant in the present case was the plaintiff in a lawsuit which had previously been filed against him based on fraud. Given this record of flagrant juror misconduct, to undertake further review would only waste the time and resources of both the parties and the trial court, since denial of a new trial under theses circumstances would be a clear abuse of discretion.
This case presents egregious behavior by jurors and demonstrates the complexity of attempting to preclude relief unless counsel stops the proceedings to search court records to discover juror concealment, because at least the federal court proceedings would not have been disclosed in the records of the Dade County courthouse. As we have previously expressed, in a perfect world, this type of circumstance should be corrected before a jury panel receives evidence, but such is not a sufficient reason, with current resources, to deny the fundamental right to a proper jury. Accordingly, consistent with the Court's opinions in De La Rosa and Tejada, we quash the decision of the district court, and remand with directions that Kelly be granted a new trial.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
WELLS, C.J., concurs in part and dissents in part with an opinion.
WELLS, C.J., concurring in part and dissenting in part.
I concur in quashing the Third District's decision because I conclude that the nondisclosure by Skinner of his litigation experience appears to bring this case within the analysis which should be done in accord with our decision in De La Rosa v. Zequeira, 659 So.2d 239 (Fla.1995). However, I dissent from the majority's ordering of a new trial. I believe that the correct result would be to direct the trial court to evaluate and apply the three prongs of De La Rosa. The trial court's order denying Kelly a new trial does not mention De La Rosa.
In De La Rosa, the trial court had granted the motion for new trial, and this Court quashed the district court of appeal's reversal of the order granting the *477 new trial. See id. at 242. Similarly, in Roberts v. Tejada, 814 So.2d 334, 345 (Fla. 2002), this Court remanded the issue of materiality "to the trial court for reconsideration of the issues raised here consistent with the standards articulated in De La Rosa." I did not agree with quashing the district court in Tejada because it appeared to me that what was not disclosed was immaterial as a matter of law and that the trial court clearly would have so ruled but for an erroneous view of the law. See id. at 346 (Wells, C.J., dissenting).
However, my decision in Tejada was not based upon a conclusion that the De La Rosa basis for granting a new trial should be determined by an appellate court. The voir dire is held before the trial court, and it is the trial judge who is in the best position to make the decision as to whether, after considering all of the De La Rosa factors, a new trial should be granted. Therefore, this case should be remanded so that the trial court can issue an order granting or denying a new trial after specifically applying De La Rosa.
As I wrote in my dissent in Tejada, see id. at 346 (Wells, C.J., dissenting), I am concerned about the reach of De La Rosa. I believe De La Rosa must be kept within narrow bounds or the sanctity of jury verdicts will quickly be eroded. In this case, it does appear that Skinner intentionally did not disclose material information. However, I am not convinced that Kelly's counsel met the due diligence requirement of De La Rosa, 659 So.2d at 241 ("[T]he complaining party must establish ... that the failure to disclose the information was not attributable to the complaining party's lack of diligence."). I am skeptical as to what was occurring when Kelly's counsel did not ask more questions of Skinner, if for no other reason than that he had been a lawyer and lawyers usually are thoroughly interrogated as prospective jurors because they are lawyers. Although Humana's counsel asked limited questions regarding Skinner's prior litigation experience, Kelly's counsel (the complaining party) did not ask any questions regarding Skinner's personal involvement in prior litigation. The trial court should assess these concerns by applying the De La Rosa test. See Tejada, 814 So.2d at 346 ("It is the trial court that should make [the determination of whether concealed information is material] upon application of proper principles."). As was done in Tejada, I would quash and remand the decision below "with directions that the Third District remand the case to the trial court for reconsideration of the issues raised here consistent with the standards articulated in De La Rosa." See id. at 345.
NOTES
[1] We decline to address the issues raised by the petitioner which are beyond the scope of the basis for our conflict jurisdiction.
[2] This Court had suspended Skinner from the practice of law in July 1994, see Florida Bar v. Skinner, 641 So.2d 1347 (Fla.1994), on the Bar's Petition for Emergency Suspension. In October 1994, Skinner filed in this Court a "Petition For Disciplinary Resignation" without leave to apply for readmission for 5 years. The petition makes reference to four separate Florida Bar complaint files (from 1985, 1987, 1989, and 1994), including an incident involving "the manner in which he handled funds entrusted to him," for which he was privately reprimanded in 1991. The Petition was granted. See Florida Bar v. Skinner, 650 So.2d 992 (Fla.1994).
[3] The United States Supreme Court subsequently ordered Skinner to show cause why he should not be disbarred, see In re Disbarment of Skinner, 513 U.S. 1124, 115 S.Ct. 931, 130 L.Ed.2d 877 (1995), and thereafter disbarred him. See In re Disbarment of Skinner, 514 U.S. 1012, 115 S.Ct. 1351, 131 L.Ed.2d 211 (1995).
[4] The approximate breakdown of only those cases shown on the Dade Circuit Court computer printout reflected: twenty-three contract, one eminent domain, one landlord-tenant, six mortgage, two professional, one real property and thirteen general "civil." Skinner appears to have been a defendant in approximately twenty-five of these cases, a plaintiff in the seven, and an unspecified party in fourteen.
[5] In Toyota Motor Credit Corp. v. Lake Worth Hosp. Corp., No. 95-10592 (Fla. 11th Cir. Ct. complaint filed May 24, 1995), Skinner was accused, essentially, of converting an automobile. In Berg v. Skinner, 94-06758-CA-23 (Fla. 11th Cir. Ct. complaint filed Jan. 11, 1996), Skinner was accused of misrepresentation and fraud. In Citibank v. Singh, No. 9600715 (Fla. 11th Cir. Ct. second amended complaint filed Mar. 8, 1996), Skinner, along with others, was accused of a "conspiratorial scheme" to commit "fraud on the judicial system and other lien-holders."
[6] In United States v. Stefan, 784 F.2d 1093, 1103 (11th Cir.1986), and United States v. Freedman, 688 F.2d 1364 (11th Cir.1982), Skinner, Leo Greenfield, and others, were indicted for conspiracy to defraud the Miami National Bank. In Citibank, N.A. v. Data Lease Financial Corp., 828 F.2d 686 (11th Cir.1987), cert denied, 484 U.S. 1062, 108 S.Ct. 1019, 98 L.Ed.2d 985 (1988), Skinner, as a director of the Miami National Bank, was accused of civil theft, fraud, false statements and untruthfulness.
[7] Kelly alleged that juror Robert Dawson failed to disclose a bias against wealthy persons.
[8] The flagrant nondisclosures which occurred in this case underscore that a rule such as that announced by the Third District in Tejada (that "the time to check the jurors' names against the clerk's lawsuit index is at the conclusion of jury selection," 760 So.2d at 966) fails to adequately address the complex circumstances in which jurors' intentional or unintentional omissions may arise during the voir dire process. Where, as here, significant matter concealed during voir dire may not be revealed or resolved solely by reference to the clerk's index in a single courthouse, the Tejada limitation is contrary to any sense of justice.